**FELDMAN ASSOCIATES, a DIVISION OF ADVERTISING AND DESIGN SERVICES, LTD., an Illinois corporation, Plaintiff,**

v.

**LINGARD & ASSOCIATES, INC., a Georgia corporation, Defendant.**

No. 87 C 7564.

United States District Court, N.D. Illinois, E.D.

Jan. 15, 1988.

Stephen P. Durchslag, Henry L. Mason, III, Alan R. Dolinko, Sidley & Austin, Chicago, Ill., for plaintiff.

Rene A. Torrado, Jr., Randal L. Golden, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., William E. Davidson, Jr., Smith, Shaw, Maddox, Davidson & Graham, Rome, Ga., for defendant.

## MEMORANDUM ORDER

BUA, District Judge.

■ Defendant in this breach-of-contract action moves to dismiss plaintiff's complaint for lack of personal jurisdiction. Alternatively, defendant moves to transfer this case to the Northern District of Georgia. For the reasons stated herein, this court denies defendant's motion to dismiss, but grants defendant's motion to transfer.

### FACTS [1]

Plaintiff Feldman Associates ("FA") is a division of Advertising and Design Services, Ltd., an Illinois corporation headquartered in Chicago. As part of a promotional campaign for Follett College Book Co. ("Follett"), FA planned to launch a sweepstakes game entitled "Follett's $1,000,000 Advantage." Before Follett could introduce the game to its customers, however, FA needed to procure a supply of game stickers. Based on the recommendation of a Follett official, FA contacted defendant LinGard & Associates, Inc., ("LinGard"), a Georgia corporation that manufactures textbook price stickers. During this initial communication, FA stated that it was looking for a vendor of game stickers. Shortly thereafter, LinGard's President, John Linville, telephoned FA's President, James Feldman, to express an interest in supplying FA with game stickers. Linville agreed to visit Chicago for further negotiations with Feldman.

On November 5, 1986, Feldman, Linville, and several of their associates met at FA's offices in Chicago. Linville made a presentation of LinGard's adhesive products to some FA officials. Then representatives of the two companies began to negotiate the terms of a proposed FA–LinGard contract. Although the parties came to terms on several issues (e.g., the quantity of stickers, the shipment dates), they failed to reach agreement on the price of the stickers. When the meeting adjourned, FA and LinGard had not yet executed a contract.

Upon returning to Georgia, Linville revised his offer in an effort to make the price more palatable to FA. After several rounds of telephone negotiations, the parties arrived at a mutually acceptable price, and entered into a contract. Under the agreement, LinGard was to manufacture the game stickers, which would then be shipped (F.O.B. Calhoun, Georgia) to bookstores selling Follett books throughout the nation. The contract ultimately signed by FA and LinGard included a number of the terms to which the parties had agreed at their Chicago meeting.

After receiving payment from FA, LinGard failed to produce a sufficient number of stickers to satisfy the contract. In addition, the stickers that LinGard produced were defective. Claiming breach of contract, as well as breach of express and implied warranties, FA filed suit against LinGard in U.S. District Court for the Northern District of Illinois.

## DISCUSSION

### I. *Motion to Dismiss*

■ LinGard has moved to dismiss FA's complaint on the ground that this court lacks personal jurisdiction. *See* Fed.R.Civ. P. 12(b)(2). In a suit based on diversity of citizenship, a federal court has personal

---

1. In deciding whether jurisdiction exists, a court must accept all undenied well-pleaded allegations in plaintiff's complaint as true, and must resolve all factual disputes in plaintiff's favor. *Neiman v. Rudolf Wolff & Co., Ltd.,* 619 F.2d 1189, 1190 (7th Cir.), *cert. denied,* 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980). Therefore, for purposes of this opinion, this court has adopted FA's version of the facts of the case.

jurisdiction over the parties only if the forum state court would have jurisdiction. *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596, 598 (7th Cir.1979), *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980). Thus, jurisdiction in the instant case hinges on whether an Illinois court could exercise personal jurisdiction over LinGard, a Georgia corporation.

■ Under the Illinois long-arm statute, Ill.Ann.Stat. ch. 110, para. 2–209 (Smith–Hurd 1983), a state court may assert jurisdiction over a nonresident corporation if the corporation engaged in "the transaction of any business" within Illinois, and if the cause of action arose from the in-state transaction. FA argues that Linville's trip to Chicago culminated in the transaction of business in Illinois, thereby providing a predicate for personal jurisdiction. This court agrees. Linville's presentation of LinGard products amounted to in-state solicitation. When such a sales pitch leads to the formation of a contract, the act of solicitation establishes long-arm jurisdiction in any case relating to the contract. *Scovill Mfg. Co. v. Dateline Elec. Co.*, 461 F.2d 897 (7th Cir.1972); *Walker v. Carnival Cruise Lines, Inc.*, No. 87 C 115 (N.D.Ill. Nov. 5, 1987) [Available on WESTLAW, 1987 WL 19554]; *Morton v. Environmental Land Sys., Ltd.*, 55 Ill.App.3d 369, 13 Ill.Dec. 79, 370 N.E.2d 1106 (1977). Furthermore, LinGard officials participated in contract negotiations while in Chicago. In fact, the parties hammered out several terms of the final contract during their Chicago meeting. Once a nonresident corporation comes to Illinois and conducts substantial negotiations concerning a contract, that corporation exposes itself to Illinois jurisdiction in the event the contract becomes the subject of litigation. *Ronco, Inc. v. Plastics, Inc.*, 539 F.Supp. 391 (N.D.Ill.1982); *Mandalay Assoc. Ltd. Partnership v. Hoffman*, 141 Ill.

App.3d 891, 96 Ill.Dec. 225, 491 N.E.2d 39 (1986).[2]

LinGard contends that this court cannot properly exercise long-arm jurisdiction because FA initiated communication between the parties, in effect luring LinGard into Illinois. Standing alone, however, the mere initiation of contact by FA does not amount to the sort of "luring" that would defeat jurisdiction. LinGard's "luring" argument might have merit if FA had invited LinGard officials to Chicago for the purpose of setting a jurisdictional trap; but LinGard has offered no evidence of any duplicity on FA's part. If anything, the prospect of doing business lured LinGard officials to Illinois. Linville and his colleagues traveled to Chicago voluntarily, in the hope of selling their product to FA. When commercial expediency induces representatives of a nonresident corporation to visit Illinois, the courts have found the exercise of long-arm jurisdiction entirely appropriate. *See Ronco*, 539 F.Supp. at 396 n. 7; *Mandalay Assoc. Ltd. Partnership*, 141 Ill. App.3d at 895–96, 96 Ill.Dec. at 229, 491 N.E.2d at 43.

■ In addition to satisfying state jurisdictional prerequisites, the case at bar meets the constitutional standard of "minimum contacts" necessary to establish jurisdiction. *See International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "Because [LinGard] contracted with an Illinois corporation, and then intentionally placed its goods in the stream of commerce destined for Illinois, the due process clause permits suit to be brought in Illinois on the contract." *Ronco*, 539 F.Supp. at 400.

By transacting business in Illinois, LinGard has fulfilled both state and constitutional requirements for personal jurisdiction. Consequently, this court denies LinGard's motion to dismiss.

---

**2.** Even assuming that no substantial negotiations occurred in Illinois, as LinGard contends, personal jurisdiction would still exist because "the discussions that took place in Illinois between [Feldman] and [Linville] played a part in the subsequent negotiations between [FA] and [LinGard], which led to the contract between [the parties]. The contract under which the plaintiff is suing ... thus lies in the wake of [Linville's] commercial activities in Illinois." *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1215–16 (7th Cir.1984).

## II. *Motion to Transfer*

■ Having rejected LinGard's motion to dismiss, this court must now consider LinGard's alternative motion to transfer this action to the Northern District of Georgia. Because this case pits an Illinois corporation against a Georgia corporation, LinGard's motion satisfies the first prerequisite for transfer: Venue is proper in both the transferor and transferee districts. *See Gallery House, Inc. v. Yi,* 587 F.Supp. 1036, 1038 (N.D.Ill.1984). To justify a change of venue, however, LinGard must demonstrate that transfer of this case will best serve the interests articulated by 28 U.S.C. § 1404(a): the convenience of the parties, the convenience of the witnesses, and the interest of justice.

### A. Convenience of the Parties

■ Georgia would not provide a more convenient forum for both parties. While LinGard would find it easier to try the case in Georgia, transfer would merely shift the burden of inconvenience from LinGard to FA. Such a shift in inconvenience, without more, does not justify transfer. *Id.* at 1040.

### B. Convenience of the Witnesses

■ The relative convenience of the witnesses, however, clearly favors the Georgia forum. LinGard's defense relies heavily on the testimony of several employees of Consolidated Tape and Label ("Consolidated Tape"), the Georgia company that printed the game stickers at issue in this lawsuit. According to LinGard, Consolidated Tape employees will testify that FA supervised and approved the printing of the stickers at Consolidated Tapes's facilities in Georgia. Despite the significance of their testimony, these witnesses might not testify at all if the trial is held in Illinois. As third parties with no real interest in the case, the Consolidated Tape employees might refuse to travel to Illinois; and as Georgia citizens, these prospective witnesses would lie beyond the reach of an Illinois court's compulsory process. Neither motivated nor legally compelled to testify, the Consolidated Tape witnesses might never appear in an Illinois courtroom.

In contrast, transfer to a Georgia venue would not seriously hamper the presentation of FA's case. According to FA, several employees of Illinois bookstores will testify about the defects in the LinGard stickers. Admittedly, a transfer to Georgia would inconvenience these Illinois witnesses. Nonetheless, compared to the Consolidated Tape witnesses, the bookstore employees would have a much greater incentive to travel to a different forum for trial. Unlike Consolidated Tape, the bookstores have an ongoing business relationship with one of the parties to this lawsuit. FA continues to serve as an advertising consultant to Follett and its stores. Moreover, the events leading to litigation directly affected the bookstores; their promotional campaign was ruined by LinGard's production of defective stickers. Consequently, wherever this trial is held, the bookstore employees will probably appear to testify.

In any event, FA need not rely on Illinois witnesses to establish that LinGard's stickers were defective. Bookstores in Georgia, Alabama, North Carolina, and Tennessee also received the allegedly defective stickers. Employees from these southern bookstores would have relatively easy access to a Georgia court, and could provide basically the same sort of testimony that the Illinois witnesses would offer.

Unlike FA, LinGard does not enjoy the luxury of having alternative witnesses available near its opponent's forum state. Only the employees of Consolidated Tape can provide certain testimony crucial to LinGard's defense. Inconvenience to such key witnesses could jeopardize LinGard's entire case. Given the relative importance of the Consolidated Tape testimony, as well as the availability of southern witnesses who could testify for FA, this court concludes that the Georgia forum best serves the convenience of the witnesses in this case.

### C. Interest of Justice

■ Transfer of this case would also advance the interest of justice. The courts have long recognized that, whenever possi-

ble, a diversity case should be decided by the court most familiar with the applicable state law. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Harris Trust and Sav. Bank v. SLT Warehouse Co.,* 605 F.Supp. 225, 229 (N.D.Ill.1985). After applying the Illinois conflict-of-law rules to the case at bar, pursuant to *Klaxon Corp. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), this court has determined that Georgia law will govern the outcome of this litigation.[3] Therefore, transfer of this case to Georgia will allow trial to proceed before a court that is more accustomed to interpreting the applicable law.

Because the alternative forum proposed by LinGard best serves both the convenience of witnesses and the interest of justice, this court grants LinGard's motion to transfer this case to the Northern District of Georgia.

## CONCLUSION

For the foregoing reasons, this court denies LinGard's motion to dismiss, but grants LinGard's motion to transfer. This action is transferred to the United States District Court for the Northern District of Georgia.

IT IS SO ORDERED.

---

3. The conflict-of-law rules produce the same conclusion whether this court applies the traditional approach or the more modern "most significant contacts" analysis. Under the traditional approach, the law of the place of performance dictates the resolution of a contract case. *See, e.g., Oakes v. Chicago Fire Brick Co.,* 388 Ill. 474, 58 N.E.2d 460 (1944). Because both parties agree that Georgia is the site of the contract's performance, Georgia law would obviously control this case under traditional conflict-of-law principles. The "most significant contacts" approach, however, requires consideration of several other factors (e.g., the place of negotiation,

the domicile of the parties). Nonetheless, in this case, these additional factors do not conclusively favor one state over another. With the exception of the place of performance, the parties' contacts are roughly evenly split between Illinois and Georgia. When a contract is to be performed primarily in one state, and when the other "most significant contacts" factors prove inconclusive, the law of the place of performance governs any litigation arising from the contract. *See, e.g., Wonderlic Agency, Inc. v. Acceleration Corp.,* 624 F.Supp. 801 (N.D.Ill. 1985). Therefore, Georgia law controls the case at bar.