**WEB SPECIALTIES, INC., an Illinois corporation, Plaintiff,**

v.

**Vaso BORETA, d/b/a Las Vegas Discount Golf & Tennis, Defendant.**

**No. 87 C 10736.**

United States District Court, N.D. Illinois, E.D.

March 21, 1988.

---

Paul J. Petit, Lisa J. Glick, Altheimer & Gray, Chicago, Ill., for plaintiff.

Eugene E. Gozdecki, Gozdecki, Zido & Behnke, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

Based on allegations of fraud and breach of contract, plaintiff filed suit against defendant in the Northern District of Illinois. Pursuant to 28 U.S.C. § 1404(a), defendant now seeks to transfer this action to the United States District Court in Nevada. For the reasons stated herein, this court denies defendant's motion to transfer.

## FACTS

Defendant Las Vegas Discount Golf & Tennis ("Las Vegas Golf"), a Nevada corporation, sells golf and tennis equipment nationwide on a mail-order discount basis. Las Vegas Golf receives most of its business through its merchandise catalogs, which it mails to prospective customers at selected times during the year. Plaintiff Web Specialties, Inc. ("Web"), an Illinois corporation, engages in the business of developing, producing, printing, and distributing mail-order catalogs.

In July 1987, the parties entered into the agreement that forms the basis of their current dispute. Under the terms of the agreement, Las Vegas Golf was to make five installment payments to Web totaling $344,000. In return, Web was to develop, produce, print, and mail Las Vegas Golf's fall catalog. At Las Vegas Golf's insistence, Web agreed to an October 1, 1987 mailing date, so that customers would receive the catalogs in time to place orders for the holiday season.

In late November 1987, having already made three payments on the contract, Las Vegas Golf issued a check to Web for $86,000, representing the fourth installment payment. Before Web could collect on the check, however, Las Vegas Golf stopped payment. In addition, Las Vegas Golf refused to make the fifth and final installment payment.

Web has filed suit in the Northern District of Illinois, claiming that Las Vegas Golf breached the contract by withholding the last two installment payments. Web also alleges that Las Vegas Golf committed fraud and willful breach of contract by stopping payment on the fourth installment check. Las Vegas Golf has responded to Web's complaint by asserting a variety of affirmative defenses and counterclaims. Essentially, Las Vegas Golf avers that Web breached the agreement by producing catalogs of poor quality and by failing to mail the catalogs on time. Las Vegas Golf also claims that Web made fraudulent misrepresentations during contract negotiations. In addition, Las Vegas Golf has moved to transfer this case from Illinois to Nevada.

## DISCUSSION

Las Vegas Golf's transfer motion satisfies the preliminary prerequisites of 28 U.S.C. § 1404(a): Because this case involves litigants from Illinois and Nevada, venue is proper in both the transferor and transferee districts. Nonetheless, before this court will send the case to Nevada, Las Vegas Golf must show that considerations of convenience and justice justify such a transfer. *See Ratner v. Hecht,* 621 F.Supp. 378 (N.D.Ill.1985). Section 1404(a) articulates three factors for assessing the propriety of transfer: the convenience of the parties; the convenience of the witnesses; and the interest of justice.

### I. Convenience of the Parties

As is typical of most litigation, a change of venue in the instant case would merely shift the burden of inconvenience from the defendant to the plaintiff. Web and Las Vegas Golf are both small corporations; neither company maintains offices or significant business contacts in the home state of its opponent. In these respects, the parties resemble the litigants in *Letter–*

*Rite, Inc. v. Computer Talk, Inc.,* 605 F.Supp. 717 (N.D.Ill.1985). As in *Letter–Rite,* each party would suffer inconvenience if forced to litigate in the other's forum.[1] Thus, a transfer to Nevada would not enhance the parties' overall convenience in trying this lawsuit.

## II. *Convenience of the Witnesses*

Frequently, the decision to grant or deny a transfer motion hinges on a single critical factor: the convenience of the witnesses likely to testify at trial. *Coats Co., Inc. v. Vulcan Equipment Co., Ltd.,* 459 F.Supp. 654 (N.D.Ill.1978). In analyzing this factor in the present case, this court must consider not only the number of potential witnesses in Illinois and Nevada, but also the nature and quality of their testimony in relation to the issues in the case. *See Environmental Services, Inc. v. Bell Lumber & Pole Co.,* 607 F.Supp. 851, 854 (N.D.Ill.1984). Las Vegas Golf asserts that this litigation raises a variety of issues. Ultimately, however, the outcome of this lawsuit will depend on the answers to two simple questions: Were the catalogs mailed by the contract deadline of October 1, 1987? If not, which of the parties was responsible for the delay in mailing? The witnesses who can shed light on these issues hold the key to resolving this case. Obviously, the trial venue must be selected with an eye toward accommodating these crucial witnesses.

Las Vegas Golf claims that Ken Robinson and William Hart, two "critical" nonparty witnesses who reside in Nevada, will probably not travel to Illinois to testify. Las Vegas Golf, however, has never explained why Robinson's testimony will be significant. Robinson, a former Las Vegas Golf employee, participated in the initial dialogue between the parties, and attended some of the negotiations that led to the contract. Nonetheless, Robinson apparently played no role in the production of the catalogs. While he could offer some insight into the contract negotiation process, Robinson's testimony would not help to resolve the central issue in the case—i.e., who was responsible for the delay in mailing.

With respect to this pivotal issue, William Hart's testimony could prove helpful. Hart assisted Las Vegas Golf in designing the catalog's layout. Based on his involvement in the production process, Hart might be able to identify the factors that caused the delay in mailing. Nonetheless, Hart is only one witness; and a number of nonparty witnesses in Illinois possess superior knowledge of the events that transpired during the catalogs' production. The independent contractors who produced and printed the catalogs all reside in Illinois. Due to their integral role in assembling the catalogs, these witnesses have firsthand knowledge of any slowdowns in production and the reasons for such delays.

Basically, this lawsuit boils down to a factual dispute between the parties. Las Vegas Golf holds Web completely responsible for the late mailing; Web, on the other hand, claims that Las Vegas Golf made late submissions of products, descriptions, and pricing information, thereby causing the delay in the catalogs' production and shipment. The testimony of the Illinois witnesses will most likely resolve this dispute by establishing where the blame for the delay really lies. The presence of such essential witnesses in this district weighs heavily against transfer.

## III. *Interest of Justice*

Finally, this court must consider whether a transfer to Nevada would serve the inter-

1. Las Vegas Golf claims that it would experience greater hardship than Web if compelled to travel to a distant forum, primarily because Las Vegas Golf's entire management team would have to come to Illinois to testify. This court, however, cannot accept the inference that an Illinois trial would leave Las Vegas Golf without any supervisory personnel in Nevada. There is no indication that the trial would require all three officers of Las Vegas Golf to appear at the same time; at least one officer would be available at all times during the trial to oversee the business in Nevada. Thus, a trial in Illinois would not significantly disrupt Las Vegas Golf's business operations. Admittedly, the Illinois forum will be inconvenient to Las Vegas Golf; but transfer to Nevada would impose a comparable inconvenience on Web, whose vice president of marketing would have to leave his Illinois business in order to testify at trial. Consequently, the Nevada forum would not better facilitate the parties' access to court; any increase in convenience for Las Vegas Golf would be offset by the resulting inconvenience to Web.

est of justice. Las Vegas Golf contends that a federal court in Nevada would be better suited to adjudicate this case because Nevada law governs the litigation. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) (it is preferable to try a diversity case "in a forum that is at home with the state law that must govern the case"). *Gilbert*'s axiom notwithstanding, this court sees no need to resolve the choice-of-law issue at this time. Even assuming that Nevada law applies to this dispute, a more compelling concern tips the balance of equity in favor of the Illinois forum. Almost all of the significant nonparty witnesses live in Illinois. The testimony of the Illinois witnesses is vital to the fair resolution of this dispute; yet the parties have no assurances that these witnesses will voluntarily travel to Nevada to testify.[2] Moreover, a federal court in Nevada could not compel these Illinois citizens to appear at trial. Only by retaining the case in this district, where the Illinois witnesses would be subject to compulsory process, can this court ensure the presence of these key witnesses at trial. Given the significance of the testimony that the Illinois witnesses will offer, transfer of this case to Nevada would not serve the best interest of justice.

## CONCLUSION

For the foregoing reasons, this court denies Las Vegas Golf's motion to transfer.

IT IS SO ORDERED.

---

**2.** Las Vegas Golf contends that the Illinois witnesses will have sufficient incentive to testify voluntarily in a distant forum because, much like plaintiff's witnesses in *Feldman Associates v. LinGard & Associates, Inc.*, 676 F.Supp. 877 (N.D.Ill.1988), they have an ongoing business relationship with the plaintiff and a direct interest in the outcome of the case. This analogy, however, disintegrates upon close scrutiny. In *Feldman Associates*, the alleged breach of contract directly affected the witnesses in question —college bookstore employees, whose pro-

motional campaign was purportedly ruined by defendant's breach. Web's Illinois witnesses, on the other hand, have suffered no adverse effects as a result of Las Vegas Golf's failure to make payments. Regardless of who prevails in this action, the independent contractors who produced the catalogs will be entitled to receive payment under their separate contracts with Web. Thus, with no financial stake in this litigation, the Illinois witnesses would have no reason to travel to Nevada to testify.