**Jacob J. FINK and Peterson Corp., Inc., f/k/a Brighton Products, Inc., an Illinois Corporation, Plaintiffs,**

v.

**Ronald DECLASSIS and L.T. Laboratories, Inc., a/k/a L.T. Corporation, a Massachusetts Corporation, Defendants.**

No. 90 C 401.

United States District Court, N.D. Illinois, E.D.

June 26, 1990.

Michael J. Rovell, Joel J. Africk, and Lisa I. Fair, Jenner & Block, Chicago, Ill., for plaintiffs.

James D. Ossyra, Hopkins & Sutter, Chicago, Ill., Bradley C. Pinta, and Michael J. Griffin, Sullivan, Sullivan & Pinta, Boston, Mass., for defendants.

## ORDER

BUA, District Judge.

Pursuant to 28 U.S.C. § 1404(a), defendants have moved to transfer this diversity case to the United States District Court for the District of Massachusetts. For the reasons stated herein, defendants' motion to transfer is denied.

## I. FACTS

Defendant L.T. Laboratories, also known as L.T. Corporation ("LT"), is a Massachusetts corporation which markets and distributes health and beauty products. Plaintiff Peterson Corporation, formerly known as Brighton Products, Inc.,[1] is an Illinois corporation which manufactures beauty aid products and markets them to retailers.

In 1988, LT expressed an interest in acquiring the assets of Peterson, which consisted primarily of two eye care product lines known as "Eye–Gel" and "Eye–Pac." For approximately six months, representatives of both companies engaged in extensive negotiations. The parties eventually reached an agreement, and the sale was closed on June 21, 1989. After signing the asset purchase agreement, plaintiff Jacob J. Fink, who was the president of Peterson, executed a consulting agreement in which he agreed to provide consulting services in connection with the production and sale of Eye–Gel and Eye–Pac.

Just one month after closing, the Food and Drug Administration ("FDA") discovered that large quantities of Eye–Gel were contaminated with pseudomonas bacteria. Unfortunately, Peterson had already shipped the contaminated product to various distributors, including LT. The FDA then instituted a nationwide recall of Eye–Gel.

Due to the product contamination, sales of Eye–Gel decreased dramatically. Consequently, LT filed suit against Fink and Peterson on January 8, 1990, in the District of Massachusetts. LT's complaint asserts claims for fraud, misrepresentation, breach of contract, and breach of warranty.

On January 23, 1990, Fink and Peterson filed the instant case against LT and its president, Ronald DeClassis. Plaintiffs as-

---

1. For purposes of this opinion, the court shall refer to Peterson Corporation and its predecessor, Brighton Products, Inc., as "Peterson."

sert several claims, including breach of the asset purchase agreement and breach of the consulting agreement. Fink also asserts a slander claim against DeClassis. Defendants now move to transfer this case to Massachusetts.

## II. DISCUSSION

A district court may transfer a case if: (1) venue is proper in the transferor district; (2) venue is proper in the transferee district; and (3) the transfer is for the convenience of the parties and witnesses and the interest of justice. *Ratner v. Hecht,* 621 F.Supp. 378, 381 (N.D.Ill.1985).

Venue is proper in the transferor district, the Northern District of Illinois, because both plaintiffs reside in this district. *See* 28 U.S.C. § 1391(a), (c). Whether venue is proper in the transferee district, however, is not as straightforward. Only one of the defendants resides in the District of Massachusetts and, therefore, venue will be proper in Massachusetts only if the claim arose there. *See id.* § 1391(a).

The most commonly applied test for determining where the claim arose, and the test employed by this court in the past, is the "weight of contacts" test. *See Schubert v. Gay & Taylor, Inc.,* 716 F.Supp. 1129, 1131 (N.D.Ill.1989); *Trademasters Int'l, Inc. v. Borer,* 687 F.Supp. 434, 435 (N.D.Ill.1988); *Heller Financial, Inc. v. Shop–A–Lot, Inc.,* 680 F.Supp. 292, 294 (N.D.Ill.1988). Under the "weight of contacts" test, the court must examine defendants' contacts with the Northern District of Illinois and the District of Massachusetts—the districts which bear the closest connection to plaintiffs' cause of action. *Heller Financial, Inc.,* 680 F.Supp. at 294–95. Plaintiffs' cause of action is deemed to have arisen in the district in which defendants' contacts are most significant. *Id.* at 295.

After applying the "weight of contacts" test, the court concludes that defendants' contacts are most significant in the Northern District of Illinois. Although LT maintains its corporate offices in Massachusetts, the subject matter of the asset purchase agreement is located in Illinois. LT took possession of Peterson's assets in Illinois, and the newly acquired equipment and inventory was never transported to Massachusetts. *Affidavit of Jacob J. Fink,* ¶ 17. After acquiring Peterson's assets, the manufacturing, packaging, and shipping operations for Eye–Gel were conducted in Illinois. *Id.*

With respect to all four counts of plaintiffs' complaint, defendants had greater contact with Illinois than with Massachusetts. In Count I, Fink accuses DeClassis of making slanderous remarks to Peterson's representatives, some of whom reside in Illinois. In making the allegedly slanderous statements, DeClassis had no readily apparent contact with Massachusetts.

In Counts II and III, respectively, plaintiffs allege that LT breached the consulting agreement and the asset purchase agreement. Each of these claims essentially stems from acts that occurred in Illinois, not Massachusetts. The negotiations which led to both agreements were conducted at Fink's office in Chicago, Illinois. *Id.* ¶¶ 7, 9, 10. The offer to purchase Peterson's assets was made in Chicago. *Id.* ¶¶ 7, 9. Ultimately, the agreements were executed and closed in Chicago. Neither Fink nor any of Peterson's other representatives traveled to Massachusetts in connection with the negotiation or performance of the asset purchase and consulting agreements. *Id.* ¶¶ 10, 18.

Not only were the contractual agreements formed in Illinois, but they were also allegedly breached in Illinois. Counts II and III contain allegations that LT refused to pay full compensation to Fink, an Illinois advertising broker, and an Illinois packaging supplier. Plaintiffs also allege that LT failed to make several payments to Peterson for sales that were made prior to LT's acquisition of Peterson. All of the foregoing payments were to be made in Illinois. Therefore, Illinois is the situs of the alleged breach. *See Heller Financial, Inc.,* 680 F.Supp. at 295 ("the main factor weighing in favor of finding that the claim arose in Illinois is that the breach occurred here because of defendants' failure to make pay-

ment ... in Chicago"); *see also Ameritech Mobile Communications, Inc. v. Cellular Communications Corp.*, 664 F.Supp. 1175, 1181–82 (N.D.Ill.1987).

Much like Counts I–III, the claim set forth in Count IV has very little, if any, connection with Massachusetts. In Count IV, plaintiffs allege that LT failed to reimburse Peterson for commissions Peterson paid to a sales representative. Similar to Counts II and III, the alleged breach occurred in Illinois where LT failed to make payment.

Based on defendants' extensive contacts with Illinois, the court concludes that the cause of action arose in Illinois. Because plaintiffs' cause of action arose in Illinois, venue is not proper in the District of Massachusetts. For this reason alone, the court would be justified in denying defendants' motion to transfer. Nonetheless, defendants have also failed to satisfy the other prerequisites for a valid transfer— *i.e.*, that the transfer would promote the convenience of the parties and witnesses, and serve the interest of justice. 28 U.S.C. § 1404(a).

██ When considering the convenience of the parties and witnesses, it is inappropriate for a court to transfer a case if it would merely shift the inconvenience from one party to the other. *Heller Financial, Inc.*, 680 F.Supp. at 295. Before a case will be transferred, there must be a clear balance of inconvenience. *Id.* In this case, defendants have failed to establish a clear balance of inconvenience. As residents of geographically remote districts, each party would be inconvenienced if forced to litigate in the other's choice of forum. Moreover, each party has identified numerous witnesses who will suffer inconvenience if the litigation proceeds in a distant forum. A transfer would do nothing more than shift the inconvenience from the defendants to the plaintiffs. Such a shift of inconvenience, standing alone, is insufficient to warrant a transfer.

Finally, it would not be in the interest of justice to set aside plaintiffs' choice of forum. Besides the inconvenience accompanying the proposed transfer, many of plaintiffs' key witnesses are beyond the subpoena power of a Massachusetts court. For example, the attorney who represented plaintiffs during the negotiation and closing of the asset purchase and consulting agreements is no longer within plaintiffs' control and may refuse to travel to Massachusetts to testify. Likewise, the representatives of several Illinois corporations which manufactured, packaged, and distributed the allegedly defective eye care products may also refuse to testify in Massachusetts. While there is no guarantee that these witnesses will voluntarily appear in a Massachusetts court, they are subject to the compulsory process of this court. Indeed, the case can be resolved more expeditiously in this court. A firm trial date has already been set. Since there is no backlog of cases on this court's docket, this case can proceed to trial in the near future as scheduled.

## III. CONCLUSION

For the foregoing reasons, defendants' motion to transfer is denied.

IT IS SO ORDERED.