**UNYTITE, INC. and Unytite Fastener Manufacturing Co., Ltd., Plaintiffs,**

v.

**LOHR STRUCTURAL FASTENERS, INC. and Kenneth B. Lohr, Defendants.**

No. 91 C 2849.

United States District Court,
N.D. Illinois, E.D.

Aug. 1, 1991.

Daniel N. Janich, Masuda, Funai, Eifert & Mitchell, Ltd., Chicago, Ill., Susan J. Brandt, Kelly D. Dahlman, Thelen, Marrin, Johnson & Bridges, Houston, Tex., for plaintiffs.

Jonathan D. Goldberg, David A. Brill, Scott P. Zoppoth, Goldberg & Simpson, P.S.C., Louisville, Ky., Paul T. Fox, Kristopher S. Heston, Holleb & Coff, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

Pursuant to 28 U.S.C. § 1404(a), defendants have moved to transfer this contract action to the United States District Court for the Southern District of Texas, where a related case between the same parties is currently pending. For the reasons stated herein, defendants' motion to transfer is denied.

## I. FACTS

Defendant Kenneth Lohr, a Texas resident, is the founder of Lohr Structural Fasteners, Inc. ("LSF"). LSF, a Texas corporation, distributes structural metal fasteners for use in the construction industry.

In 1985, Lohr developed a unique metal fastener, which he marketed under the trade name "Lohr Fastener." LSF produced this product exclusively until 1987, when Lohr extended production rights to a Japanese corporation, plaintiff Unytite Fastener Manufacturing Co., Ltd. ("Unytite Japan"). The parties entered into a contract allowing Unytite Japan to manufacture the Lohr Fastener in Japan. LSF continued to market the products manufactured by Unytite Japan.

The following year, Unytite Japan looked to expand the market for its industrial products in the United States. Seeking to strengthen its distribution network, Unytite Japan acquired a substantial block of LSF stock. Unytite Japan became the majority shareholder of LSF, having purchased 60% of LSF's outstanding stock. The stock purchase agreement took effect on November 1, 1988.

In 1990, Unytite Japan's wholly owned subsidiary, Unytite, Inc. ("Unytite Illinois"), began manufacturing the Lohr Fas-

tener from its plant in Peru, Illinois. Before the subsidiary became fully operational, Unytite Japan marketed its products primarily through LSF. As the production capacity of Unytite Illinois increased, Unytite Japan started selling its products to other distributors more extensively.

When Lohr discovered that Unytite Japan was not using LSF's exclusive services, he threatened to initiate legal action. According to Lohr, Unytite Japan had violated the terms of two distributorship agreements executed contemporaneously with the stock purchase agreement. Specifically, Lohr contends that the parties executed a sales/distribution agreement and a marketing agreement which made LSF the exclusive distributor of all metal fasteners manufactured by Unytite Illinois. (The documents relied upon by Lohr were attached to the stock purchase agreement as exhibits.) Denying that the parties ever agreed to such an arrangement, Unytite Japan claims that the alleged agreements were nothing more than business proposals to be used as a basis for future negotiations.

In an attempt to resolve their dispute, the parties engaged in settlement discussions. Negotiations reached an impasse, and Lohr began to question Unytite Japan's good faith in trying to reach a settlement. He subsequently forwarded a letter to Unytite Japan, to which a draft of a complaint was attached. Lohr informed Unytite Japan that he would file suit in federal court if Unytite Japan did not come forward with a good faith settlement proposal.

Unytite Japan beat Lohr to the courthouse. On April 22, 1991 (before Lohr filed his complaint), Unytite Japan and Unytite Illinois filed a declaratory judgment action in the Circuit Court of Cook County against Lohr and LSF. Taking the position that no exclusive distributorship agreement exists, Unytite Japan and Unytite Illinois seek a declaration allowing them to freely sell their products to distributors other than LSF.

Just one day after that complaint was filed in state court, Lohr filed suit against Unytite Japan, Unytite Illinois, and Hisashi Hashimoto (Unytite Japan's president), in the United States District Court for the Southern District of Texas. On behalf of himself and LSF shareholders, Lohr asserts numerous claims under state law and federal securities law.[1]

With two related lawsuits pending in separate fora, the parties jockeyed for position in the forum of their choice. On May 10, 1991, Lohr removed the Illinois state court action to this court based on diversity jurisdiction. Ten days later, Unytite Illinois moved to transfer the Texas federal action to the Northern District of Illinois. Meanwhile, Lohr has moved to transfer this case to the Southern District of Texas. Lohr's § 1404(a) motion is the subject of this order.

## II. DISCUSSION

The preliminary prerequisites for a change of venue are satisfied in this case: Both parties agree that venue is proper in the transferor and transferee districts.[2] This court, however, will not send the case to Texas unless such a transfer would promote the convenience of the parties, the convenience of the witnesses, and the interest of justice. 28 U.S.C. § 1404(a); *Web Specialties, Inc. v. Boreta*, 681 F.Supp. 564, 565 (N.D.Ill.1988).

### A. Convenience of the Parties

■ A transfer to Texas would not further the convenience of the parties. Neither party maintains offices in the other's home state. While Lohr insists that plaintiffs conduct substantial business in Texas, Lohr does not deny that he routinely travels to Illinois in connection with his business dealings with Unytite Illinois. Over

---

1. These claims also form the basis for defendants' counterclaims in the instant case.

2. Because this case was removed from the Circuit Court of Cook County, venue is proper in the transferor district. *General Accident Ins.* Co. v. Travelers Corp., 666 F.Supp. 1203, 1206 (N.D.Ill.1987). Venue is proper in the transferee district because defendants reside there. 28 U.S.C. § 1391(a).

the past several years, Lohr has made approximately seventeen business trips to Illinois. Having appeared voluntarily in Illinois on numerous occasions in the past, Lohr cannot persuasively argue that he would be seriously inconvenienced if forced to appear here again. *See Trademasters Int'l, Inc. v. Borer,* 687 F.Supp. 434, 436 (N.D.Ill.1988). Plaintiffs have even offered to coordinate discovery with Lohr's future visits to the offices of Unytite Illinois.

Ultimately, a change of venue would merely shift the inconvenience of the parties; any benefit accruing to the defendants would be at the expense of the plaintiffs. Such a shift in the balance of inconvenience does not warrant a transfer. *Feldman Assocs. v. Lingard & Assocs., Inc.,* 676 F.Supp. 877, 881 (N.D.Ill.1988).

### B. Convenience of the Witnesses

For purposes of evaluating the convenience of the nonparty witnesses, the court must look at the number of potential witnesses residing in Illinois and Texas, as well as the nature and quality of their testimony. *Trademasters Int'l,* 687 F.Supp. at 436; *Web Specialties,* 681 F.Supp. at 566. Although defendants suggest that this lawsuit presents numerous issues, the resolution of plaintiffs' claims and defendants' counterclaims really hinges on two critical issues: 1) is LSF the exclusive distributor of Unytite Illinois' products? 2) If so, did Unytite Illinois distribute its products in violation of the exclusive distributorship agreement? Venue should be chosen in an effort to accommodate the witnesses who can best answer these questions. *Web Specialties,* 681 F.Supp. at 566.

The individuals who can provide the greatest insight into the first question are the participants in the negotiation of the stock purchase agreement. From the briefs and exhibits submitted by the parties, it is unclear whether the contract negotiations took place primarily in Japan, Texas, or Illinois.[3] Yet, the parties apparently agree on the individuals who were either present or took part in the negotiations: Lohr, Roger Larson (LSF's vice president), Hiroko Sharon (Lohr's Japanese interpreter), Hisashi Hashimoto, Jun Hashimoto (Unytite Illinois' president), and Yuji Ozeki (a Unytite Illinois executive). Three of these witnesses—Lohr, Larson, and Sharon—reside in Texas. The remaining witnesses reside outside of Texas: Hisashi Hashimoto is a Japanese resident; Jun Hashimoto and Yuji Ozeki are Illinois residents.

With regard to the second question, most (if not all) of the material witnesses reside in Illinois. Plaintiffs have identified several Unytite Illinois employees who will provide testimony regarding Unytite Illinois' marketing and distribution practices during the relevant time period. The pertinent business records and documents relating to these business practices are also located in Illinois.

Despite defendants' general reference to unnamed Texas witnesses who can provide testimony regarding LSF's business practices, the court is unable to conclude that, on balance, Texas is a more convenient forum for the witnesses. At the very least, defendants' proposed transfer would impermissibly shift the inconvenience among the witnesses. Defendants certainly have not shown a clear balance of inconvenience—a prerequisite to a valid transfer. *Fink v. DeClassis,* 738 F.Supp. 1195, 1198 (N.D.Ill.1990).[4]

### C. Interest of Justice

 The interest of justice also weighs against defendants' motion to transfer.

---

**3.** The documents pertaining to these negotiations are located at each party's respective place of business.

**4.** Lohr emphasizes that Larson and Sharon, as Texas residents, are outside of the subpoena power of this court. While that may be true, there is no reason to believe that these two witnesses will not appear voluntarily. Lohr

does not state that they are unwilling to testify in Illinois. At any rate, the inability to compel the attendance of unwilling witnesses would be no less of a problem if the case is transferred to Texas; a Texas court would face the same difficulty in trying to secure the presence of Illinois residents who are unwilling to appear.

Relevant considerations in this regard include "ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989).

Plaintiffs inform the court, from statistics compiled by Administrative Office of the United States Courts, that the number of pending civil and criminal cases is substantially higher in the Southern District of Texas than the Northern District of Illinois. Given the heavy backlog of cases in that district, the parties would likely receive a quicker trial in Chicago.

Nevertheless, Lohr urges the court to transfer this case so that it may be consolidated with the lawsuit currently pending in Texas. This argument is not compelling. Lohr's Texas suit may be consolidated just as easily with the case pending here.[5]

This court has previously acknowledged that "whenever possible, a diversity case should be decided by the court most familiar with the applicable state law." *Feldman Assocs.*, 676 F.Supp. at 881–82. Illinois law, which governs the interpretation of the stock purchase agreement, supplies the rule of decision. It is true that defendants' counterclaims involve issues of Texas law. However, defendants admit that the counterclaims are based on the presumption that the parties signed a binding, exclusive distributorship agreement. Those claims cannot survive unless defendants first establish that the parties entered into such an agreement. And this threshold issue is a matter of Illinois law. Since the issue that is governed by Illinois law is outcome determinative, it is preferable to try this case before an Illinois court.

In short, defendants have not conclusively demonstrated that this case belongs in Texas. The court, therefore, will not interfere with plaintiffs' choice of forum.

**5.** Defendants express a concern over the threat of inconsistent judgments if the cases are not consolidated. But this threat is diminished by basic principles of res judicata and collateral estoppel, which preclude the relitigation of matters that are finally determined in a prior lawsuit between the same parties.

### III. CONCLUSION

For the foregoing reasons, defendants' motion to transfer this case to the Southern District of Texas is denied.

IT IS SO ORDERED.