OPINION
 

 Per Curiam:
 

 Rasoul Firouzabadi of Zahra’s Gifts, a California general partnership, attended a trade show in Las Vegas where he entered into
 
 *1350
 
 two written contracts and paid the full purchase price for apparel from United Apparel Corporation (UAC), a New Jersey corporation. A dispute subsequently arose regarding UAC’s performance under the contract. When petitioners filed an action in the First Judicial District Court, UAC moved to quash on the basis that it was not subject to personal jurisdiction in Nevada. The district court issued an order granting UAC’s motion to quash. The petitioners seek to have this order vacated, and to compel the district court to exercise jurisdiction over UAC. For the reasons stated below, we grant their petition.
 

 FACTS
 

 At the time of the events giving rise to this litigation, petitioners were the partners in Zahra’s Gifts, a California general partnership with its principal place of business in Sacramento County, California. Real party in interest, UAC, is a New Jersey corporation with its principal place of business in Lodi, New Jersey.
 

 In August, 1992, petitioner Rasoul Firouzabadi (Firouzabadi) traveled to Las Vegas on behalf of Zahra’s Gifts to attend the Associated Surplus Dealers/Associated Merchandise Dealers (ASD/AMD) trade show. UAC was a vendor at the show. During the course of the show, Firouzabadi met Ken and Larry Manus, representatives of UAC.
 

 While at the show, Firouzabadi and UAC negotiated and entered into two written contracts for the purchase of apparel. Under the first of these, dated August 17, 1992, Firouzabadi agreed to purchase 18,000 gauze shirts from UAC for a total purchase price of $18,000.00. Under the second contract, dated August 19, 1992, Firouzabadi agreed to purchase 10,000 rugby shirts from UAC for $14,500.00. The purchase price for both contracts was paid in full by Firouzabadi at the time the contracts were signed at the show. Both contracts provided that the shirts would be shipped from Lodi, New Jersey, to Zahra’s Gifts’ place of business in Sacramento County, California.
 

 A dispute subsequently arose regarding UAC’s performance under the contracts and regarding representations allegedly made by Larry Manus at the trade show. Petitioners brought a breach of contract claim — alleging that UAC did not ship the full quantity of gauze shirts ordered, that some of the gauze shirts received were unmarketable, that UAC has failed to deliver any of the rugby shirts, and that UAC has failed to refund any portion of the $14,500.00 purchase price paid for the rugby shirts. Additionally, petitioners brought claims for misrepresentation based upon Larry Manus’ assurances that all of the shirts purchased were in UAC’s inventory and ready to be shipped.
 

 
 *1351
 
 Initially, petitioners retained counsel and filed suit against UAC in the Superior Court of California for Sacramento County. UAC appeared specially in the California action and moved successfully to quash service of process, arguing that it lacked any contacts with California sufficient to support the exercise of personal jurisdiction by a California court. Subsequently, petitioners commenced this action in the First Judicial District Court — the nearest Nevada district court to petitioners’ principal place of business. UAC moved to quash on the basis that it did not conduct business in Nevada and had not made use of the laws or protections of this state, and that its activities at the trade show were directed solely to those in attendance at the show and not generally to residents of this state.
 

 In response, petitioners filed a motion for leave to conduct discovery limited to the jurisdictional issues raised by UAC. Petitioners asserted by way of affidavit that UAC had participated in approximately twenty ASD/AMD trade shows in Nevada during the past ten years.
 
 [1]
 

 The district court entered an order denying petitioners’ motion to conduct discovery and granting the motion to quash. The district court concluded that UAC had not purposefully availed itself of the “privilege of serving a market” in Nevada or “affirmatively directed conduct toward this state” by participating in the ASD/AMD trade show. Additionally, the district court concluded that Nevada had no significant interest in adjudicating the dispute between the parties, reasoning:
 

 If either party had significant business interests or involvement in our state, this action may have been appropriately brought in this court. However, the State of Nevada’s interest in deciding a dispute between two businesses whose only tie to its jurisdiction is their coincidental presence in Las Vegas for a trade show is very negligible.
 

 Petitioners filed a petition for a writ of mandamus with this court, requesting that we direct the district court to vacate its order quashing jurisdiction, and to assume jurisdiction.
 

 DISCUSSION
 

 Nature of the remedy
 

 As no appeal lies from an order quashing service of process, a petition for a writ of mandamus is the proper means by which to
 
 *1352
 
 challenge such an order. Orme v. District Court, 105 Nev. 712, 782 P.2d 1325 (1989); Davis v. District Court, 97 Nev. 332, 629 P.2d 1209 (1981); Jarstad v. National Farmers Union, 92 Nev. 380, 552 P.2d 49 (1976).
 

 Whether the district court abused its discretion in determining that Nevada lacked personal jurisdiction over UAC
 

 In Trump v. District Court, 109 Nev. 687, 857 P.2d 740 (1993), this court discussed the burden of proof to be met by the plaintiff in overcoming a challenge to jurisdiction. Where, as here, the jurisdictional issue is decided without a full evidentiary hearing, the plaintiff need only make a
 
 prima facie
 
 showing of jurisdiction.
 
 Id.
 
 at 692-94, 857 P.2d at 743-44.
 

 The exercise of personal jurisdiction over a nonresident defendant must be based on a showing: “(1) that the requirements of [Nevada’s] long-arm statute have been satisfied, and (2) that due process is not offended by the exercise of jurisdiction.”
 
 Trump,
 
 109 Nev. at 698, 857 P.2d at 747. Because Nevada’s long-arm statute, NRS 14.065, “has been construed to extend to the outer reaches of due process, the two inquiries . . . may be collapsed into one.”
 
 Trump,
 
 109 Nev. at 698, 857 P.2d at 747.
 

 To be consistent with the requirements of due process, the exercise of jurisdiction requires sufficient minimum contacts between the defendant and the forum state so that the suit does not offend notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945);
 
 see also Trump,
 
 109 Nev. at 698, 857 P.2d at 747; Mizner v. Mizner, 84 Nev. 268, 439 P.2d 679,
 
 cert. denied,
 
 393 U.S. 847 (1968). The defendant’s contacts with the forum state must be such that the defendant “‘should reasonably anticipate being haled into court there.’ ”
 
 Trump,
 
 109 Nev. at 699, 857 P.2d at 748 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).
 

 Personal jurisdiction may be general or specific. General personal jurisdiction exists where the defendant’s activities in the forum state are so substantial or continuous and systematic that it may be deemed present in the forum and hence subject to suit over claims unrelated to its activities there. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984);
 
 see also Trump,
 
 109 Nev. at 699, 857 P.2d at 748; Budget Rent-A-Car v. District Court, 108 Nev. 483, 485, 835 P.2d 17, 19 (1992). In the absence of general jurisdiction, specific personal jurisdiction “may be established only where the
 
 *1353
 
 cause of action arises from the defendant’s contacts with the forum.”
 
 Budget Rent-A-Car,
 
 108 Nev. at 485, 835 P.2d at 19.
 

 In this case, petitioners contend that they made a
 
 prima facie
 
 case sufficient for the assertion of specific jurisdiction. We agree.
 

 In
 
 Trump,
 
 we stated that specific jurisdiction may be exercised over a nonresident defendant where:
 

 (1) the defendant purposefully avails himself of the privilege of serving the market in the forum or of enjoying the protection of the laws of the forum, or where the defendant purposefully establishes contacts with the forum state and affirmatively directs conduct toward the forum state, and (2) the cause of action arises from that purposeful contact with the forum or conduct targeting the forum.
 

 Trump,
 
 109 Nev. at 699-700, 857 P.2d at 748.
 

 The “‘purposeful availment’” requirement ‘“may ... be satisfied if the defendant intentionally directed his activities into the forum.’”
 
 Id.
 
 at 700, 857 P.2d at 748 (quoting Brainerd v. Governors of the University of Alberta, 873 F.2d 1257, 1259 (9th Cir. 1989)). While the defendant’s contacts with the forum must be more than “ ‘random,’ ‘fortuitous,’ or ‘attenuated[,]’ ” it is the quality of the contacts and not the quantity that confers personal jurisdiction.
 
 Trump,
 
 109 Nev. at 700, 857 P.2d at 749 (quoting Munley v. District Court, 104 Nev. 492, 495-96, 761 P.2d 414, 416 (1988)).
 

 Petitioners argue that the district court’s analysis is flawed because it is based on the belief that UAC cannot be held to have availed itself of the privilege of conducting business in this state unless it specifically directed its activities in Nevada towards Nevada residents. In its order quashing jurisdiction, the district court reasoned that businesses such as UAC “attend trade shows to sell products to other businesses and enterprises that also attend the show and not to target a specific market within a particular jurisdiction.” Petitioners argue, however, that Nevada-based businesses were a part of the market targeted by UAC. Petitioners further contend that the trade show itself served as a market for buyers and sellers in the apparel business, that this trade show was the market targeted by UAC, and that UAC came to Nevada specifically to exploit this market. Petitioners thus assert that UAC’s presence at the trade show was not “fortuitous” as the district court found, but was a deliberate business
 
 *1354
 
 decision that led to the formation of the contracts at issue in this case.
 

 UAC argues that it has not purposefully availed itself of the privilege of serving the market in Nevada, or of enjoying the protection of the laws of Nevada. UAC bases this argument on the fact that its solicitation at the trade show was not directed at Nevada residents per se, but at businesses residing in a number of states. UAC thus contends that by making appearances at the trade shows, it was not conducting business within Nevada for jurisdictional purposes.
 

 The court in Scovill Manufacturing Co. v. Dateline Electric Co., 461 F.2d 897 (7th Cir. 1972), a factually similar case, rejected such an argument. Scovill, a Connecticut corporation, and the defendant Dateline, an English company, negotiated a contract at a housewares trade show in Chicago for the manufacture of goods by Dateline for Scovill. Subsequent negotiations occurred in New York and Connecticut. The contract was ultimately signed in Connecticut, with discussions concerning performance occurring thereafter at two subsequent Chicago trade shows. Scovill filed suit in Illinois after the product proved defective, and the trial court dismissed the breach of contract claim for lack of personal jurisdiction. The court of appeals reversed, concluding that Dateline had purposefully availed itself ‘“of the benefits and protections of local law and commerce.’”
 
 Scovill Manufacturing,
 
 461 F.2d at 900 (quoting Fisons, Ltd. v. United States, 458 F.2d 1241, 1250 (7th Cir. 1972)). The Court rejected Dateline’s argument that its contacts with Illinois were “casual” or “incidental,” stating:
 

 The three meetings between representatives of Scovill and [Dateline] in 1968 and 1969 in Chicago came about because of their regular attendance at the Housewares Show for business purposes. Indeed, the sole purpose of these shows was to promote business contacts and provide a place where business relationships would be initiated if not fully completed. Business needs prompted Scovill’s periodic appearances. Dateline routinely attended the shows in order to solicit potential customers. The visits of [Dateline’s representative] were made to coincide with the shows since they represented an important part of Dateline’s American business. A defendant who sends an agent into Illinois to solicit or to negotiate a contract is transacting business within the statutory definition.
 

 Id.
 

 A similar result was reached in Feldman Associates v. Lingard & Associates, 676 F. Supp. 877 (N.D. Ill. 1988). The president
 
 *1355
 
 of the defendant corporation, domiciled in Georgia, had traveled to Chicago to make a sales presentation relating to the company’s product. After his return to Georgia, the parties agreed to the terms of a contract whereby defendant was to manufacture the product and ship it to retailers throughout the nation. In the ensuing breach of contract action, the court held that personal jurisdiction over the company was properly asserted in Illinois, stating:
 

 [Defendant’s] presentation of [its] products amounted to instate solicitation. When such a sales pitch leads to the formation of a contract, the act of solicitation establishes long-arm jurisdiction in any case relating to the contract. . . . Once a nonresident corporation comes to Illinois and conducts substantial negotiations concerning a contract, that corporation exposes itself to Illinois jurisdiction in the event the contract becomes the subject of litigation.
 

 Feldman Associates,
 
 676 F. Supp. at 880 (citations omitted);
 
 see also
 
 Xedit Corp. v. Harvel Industries Corp., 456 F. Supp. 725 (S.D.N.Y. 1978) (finding that single appearance at trade show in forum constituted the transaction of business, but concluding that jurisdiction over tort claim was lacking where cause of action did not arise out of business conducted at show); Judas Priest v. District Court, 104 Nev. 424, 426, 760 P.2d 137, 139 (1988) (finding personal jurisdiction based on two concert appearances in forum, together with execution of licensing agreement for purpose of selling copies of albums nationwide; “[t]he test is whether the defendant has targeted the forum state for marketing his product, thereby purposefully availing himself of the benefits of the forum”).
 

 Following the reasoning of these cases, we reject UAC’s argument and conclude that petitioners made a
 
 prima facie
 
 showing that UAC “purposefully availed” itself of the privilege of serving the trade show market in Nevada, though the contact may not have been aimed solely at Nevada residents. It is clear that UAC came to the trade show in Nevada to market its goods and solicit business, thus benefitting from its presence in the state. Accordingly, UAC exposed itself to Nevada jurisdiction over a dispute on the contract that it entered into with petitioners at the trade show, as the entire purpose of UAC’s presence in Nevada was to negotiate such transactions.
 

 Further, we conclude that petitioners meet the second requirement necessary for the exercise of specific jurisdiction: the cause of action arose from the purposeful contact with the forum. This court has held that the claims must have “a specific and direct relationship or be intimately related to the forum contacts.”
 
 *1356
 
 Munley v. District Court, 104 Nev. 492, 496, 761 P.2d 414, 416 (1988). Both petitioners’ contract and misrepresentation claims arise from the very agreements that were negotiated and entered into at the trade show petitioners attended in Nevada.
 

 Additionally, we reject UAC’s argument that it is “unreasonable” for it to have to adjudicate this dispute in any state besides New Jersey.
 
 See
 
 Trump v. District Court, 109 Nev. 687, 700, 857 P.2d 740, 749-50 (1993) (where a defendant has the requisite contacts with the forum state necessary to establish specific jurisdiction, it may still defeat jurisdiction if it makes a compelling case that other considerations render the exercise of jurisdiction unreasonable). The record indicates UAC had been soliciting business in Nevada twice a year for the past ten years.
 
 [2]
 
 If UAC can travel to Nevada twice a year to solicit business at trade shows, it certainly cannot persuasively argue that requiring it to litigate here would exceed the limits of due process.
 

 Lastly, we reject UAC’s argument that petitioners’ residency should be dispositive in deciding the issue of jurisdiction. The district court found that “Nevada’s interest in deciding a dispute between two businesses whose only tie to its jurisdiction is their coincidental presence in Las Vegas for a trade show is very negligible.” We disagree with this reasoning in the instant case.
 

 Arguments that a state has little interest in providing a forum for an action brought by nonresidents have been rejected by other courts in cases where due process requirements were met.
 
 See
 
 Edmonton World Hockey Enterprises v. Abrahams, 658 F. Supp. 604, 608 (D. Minn. 1987) (court rejected California-based defendant’s argument that the court could not exercise personal jurisdiction over him in Minnesota because none of the plaintiffs were residents of Minnesota, stating that where the purposeful availment requirement is satisfied the fact that the parties are not residents does not affect the exercise of jurisdiction); Volt Delta Resources v. Devine, 740 P.2d 1089, 1094 (Kan. 1987) (holding that there was nothing in the statute precluding a nonresident from bringing an action where the statutory and due process requirements were met).
 

 Moreover, Nevada law should afford some protection to the out-of-state residents which Nevada hails to trade shows in order to boost Nevada business.
 
 [3]
 
 As petitioners argue, the state has an
 
 *1357
 
 interest in protecting its visitors from commercial predation and in providing a forum for the resolution of disputes having their origin here. We refuse to allow businesses to come to Nevada and enter into contracts free from any threat of litigation in this forum.
 

 Accordingly, we conclude that the district court erred in determining that petitioners failed to present a
 
 prima facie
 
 case of specific jurisdiction. We grant the petition. The clerk of this court shall issue a writ of mandamus compelling the district court to vacate the order quashing service of process and to assume jurisdiction over UAC.
 

 [1]
 

 Petitioners’ counsel stated that this information was based on a phone conversation which he had with a representative of ASD/AMD trade show. The representative volunteered that UAC had been a vendor at ASD/AMD trade shows twice each year in Las Vegas for the past ten years.
 

 [2]
 

 We note that this evidence is contrary to: (1) the district court’s finding that UAC and petitioners’ presence in Nevada were “coincidental,” (2) the district court’s finding that UAC had not “affirmatively directed conduct toward this state,” and (3) the district court’s finding that UAC had “no significant business interests or involvement in Nevada.”
 

 [3]
 

 Petitioners point out that during 1992 alone, more than 900,000 people attended trade shows in Las Vegas. They spent more than $1 billion in Nevada, exclusive of gaming expenditures. Las Vegas Convention and Visitors Authority, Fourth Quarter 1992 Las Vegas Marketing Bulletin 5 (1993).