OPINION
 

 Per Curiam:
 

 SUMMARY
 

 The underlying action arises out of Robert P. Baker’s
 
 *529
 
 (“Baker”) one-night stay at the Rio Suite Hotel Casino (“the Rio”). Because Baker believed that the Rio was engaging in false advertising by calling its hotel rooms “suites,” Baker began writing letters to the Rio, demanding that it delete the word “suite” from its advertising and threatening suit. Eventually, the Rio filed a declaratory action in Nevada district court naming Baker as the defendant and seeking a declaration that it was not violating Nevada or California law by its use of the term “suite.” Baker thereafter filed a motion to quash service based on lack of personal jurisdiction. The district court denied this motion. Consequently, Baker filed a petition for writ of prohibition with this court, alleging that the district court exceeded its jurisdiction in ruling that the Nevada courts had jurisdiction over him. We conclude that the district court properly exercised specific jurisdiction over Baker. We therefore deny the petition for writ of prohibition.
 

 STATEMENT OF THE FACTS
 

 Baker has been a resident of Los Angeles, California, since December 1977. Baker has been practicing law in California since 1977 and is the managing partner and sole owner of the law firm of Baker and Jacob.
 

 In October 1996, Baker became a member of the State Bar of Nevada. Baker, however, has never represented any party besides himself in any suit in any state or federal court in Nevada.
 

 For several years prior to 1997, while in California, Baker saw and heard various advertisements for the Rio, which stated that it was an “all suite hotel.” Baker understood the word “suite” to mean a set of rooms connected by some architectural feature to be used by one person. In early March 1997, Baker’s secretary booked him a suite with a king size bed at the Rio. Baker needed to go to Las Vegas for the purpose of visiting certain soul food restaurants and jazz clubs to “sample” the competition, as Baker had invested in a venture that was considering opening such an establishment in Las Vegas. Additionally, Baker was planning a family trip to Las Vegas and wanted to explore whether the Rio was an appropriate place for his family to stay.
 

 Baker checked into the Rio on the evening of March 12, 1997. The next morning, Baker complained to a Rio employee about the fact that his room was not a suite, as it allegedly did not have a separate seating area partitioned by some sort of architectural feature. When the Rio employee insisted that the room was a suite, Baker left without checking out or signing his credit card receipt. Later, the Rio debited Baker’s credit card, but Baker made no attempt to dispute the charge.
 

 Upon Baker’s return to Los Angeles, he began writing letters
 
 *530
 
 to the Rio. On March 20, 1997, Baker wrote a letter to the Rio, notifying it that Baker would take “appropriate legal action” if the Rio did not “admit and correct” its wrongdoing—namely, advertising itself as an “all suite” hotel when it was not. Apparently, because the Rio did not respond to Baker’s first letter, he sent a second letter on April 9, 1997. In this letter, Baker threatened suit under California law for false advertising, demanded that such advertising cease, and that the Rio rectify its misconduct by compensating all prior California Rio guests with a $50.00 refund or a free night’s stay.
 

 A Rio vice president sent Baker a letter acknowledging receipt of Baker’s letters on April 25, 1997. Thereafter, Baker sent the Rio another letter, informing it that he intended to file suit under the California Consumers Legal Remedies Act in late May and requesting a response by May 12, 1997. On May 13, 1997, the Rio responded by letter, restating its position that all its rooms were suites according to two hospitality industry texts and hospitality industry standards. Baker answered by letter on June 5, 1997, reaffirming his position that the Rio was engaging in false advertising and that his room could not “fairly be called a suite.”
 

 On June 6, 1997, the Rio sent yet another letter that pointed out that Baker and the Rio fundamentally disagreed over the Rio’s use of the word “suite.” This letter also solicited specific information concerning settlement. Baker, in his written response three days later, made the following demands: (1) deletion of the word “suite” from Rio’s name and advertising; (2) compensation for prior California Rio guests in the form of $50.00 or a free night’s stay; and (3) $5,000.00 in attorney fees. Baker emphasized that the aforementioned settlement would only resolve the matter in California.
 

 In June 1997, the same month that Baker wrote his letter concerning settlement, the Rio filed an action for declaratory relief in the United States District Court for the District of Nevada. In order to obtain jurisdiction in federal court, the Rio alleged that Baker had raised a claim concerning the validity of the Rio’s trademark, which was a federal question within the purview of the Lanham Act. Baker moved to dismiss the federal action on the ground that he had never raised a claim under the Lanham Act. This motion was denied.
 

 Baker thereafter filed a counterclaim in the federal action, alleging that the Rio was engaged in false advertising in violation of the California Consumers Legal Remedies Act.
 

 Pre-trial discovery ensued, and according to Baker, numerous delays occurred in federal court for the next two years. Then, on July 7, 1999, the Rio moved to voluntarily dismiss its complaint. According to Baker, this motion for dismissal was merely another
 
 *531
 
 delay tactic and “prior even to requesting the dismissal of its own complaint, [the] Rio had already filed this action to begin the precise lawsuit over again from the beginning.” According to the Rio, however, it moved to dismiss because “there was a serious question regarding the federal court’s subject matter jurisdiction over [the] Rio’s claims and Baker’s counterclaims.” The Rio alleges Baker opposed the motion to dismiss, but it was granted without prejudice.
 

 Thereafter, on July 8, 1999, the Rio filed a complaint for declaratory relief in state district court, seeking a declaration that it was not violating Nevada or California law by its use of the term “suite” in its name or advertising. Baker was personally served on August 9, 1999, but thereafter filed a motion to quash service, alleging that Nevada lacked personal jurisdiction over him. After conducting a hearing on Baker’s motion to quash, the district court denied Baker’s motion and ruled jurisdiction over Baker was proper because Nevada had a substantial interest in having Nevada hotel matters resolved in Nevada and that Baker had sufficient Nevada contacts.
 

 Believing that the district court erred in making this ruling, Baker filed a petition for writ of prohibition with this court, challenging the district court’s refusal to quash service of process and requesting a temporary stay of proceedings in the district court. We granted Baker’s request for a temporary stay on October 21, 1999. We now address the merits of Baker’s writ petition— namely, whether the district court properly denied Baker’s motion to quash based on its conclusion that Nevada had personal jurisdiction in the underlying dispute.
 

 DISCUSSION
 

 A writ of prohibition is the appropriate remedy where a district court exceeded its jurisdiction in refusing to quash service based on lack of personal jurisdiction.
 
 See
 
 Trump v. District Court, 109 Nev. 687, 692, 857 P.2d 740, 744 (1993). In reviewing the district court’s determination that personal jurisdiction can be properly exercised, we conduct a de novo review in matters where the facts are not disputed.
 
 See
 
 Panavision Int’l v. Toeppen, 141 F.3d 1316, 1319-20 (9th Cir. 1998).
 

 Nevada’s long-arm statute, NRS 14.065, reaches the limits of due process set by the United States Constitution.
 
 See
 
 Judas Priest v. District Court, 104 Nev. 424, 426, 760 P.2d 137, 138 (1988). In order for a forum state to obtain personal jurisdiction over a nonresident defendant, the Due Process Clause of the Fourteenth
 
 *532
 
 Amendment requires that the defendant have “minimum contacts” with the forum state “such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice.’ ” Mizner v. Mizner, 84 Nev. 268, 270, 439 P.2d 679, 680 (1968) (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Additionally, a forum state’s exercise of jurisdiction over a defendant must be reasonable.
 
 See Trump,
 
 109 Nev. at 699, 857 P.2d at 748. There are two types of personal jurisdiction: general and specific.
 
 See id.
 
 We will address each in turn.
 

 A.
 
 General jurisdiction
 

 Baker first contends that Nevada courts lack general jurisdiction over him because his status as a nonresident, nonpracticing member of the Nevada bar is insufficient to support a conclusion that Baker had systematic and continuing contacts with Nevada. We agree that the Nevada courts lack general jurisdiction over Baker.
 

 General jurisdiction is required in matters where a defendant is held to answer in a forum for causes of action unrelated to his forum activities.
 
 See Trump,
 
 109 Nev. at 699, 857 P.2d at 748. General jurisdiction over a nonresident will lie where the nonresident’s activities in the forum are “substantial” or “continuous and systematic.”
 
 Id.
 
 (citations omitted). At least two jurisdictions have held that membership in the state bar, in and of itself, does not subject an individual to general jurisdiction in the state of membership because such contact is not substantial, continuous, or systematic.
 
 See
 
 Worthington v. Small, 46 F. Supp. 2d 1126, 1134 (D. Kan. 1999); Crea v. Busby, 55 Cal. Rptr. 2d 513, 516 (Ct. App. 1996).
 

 We agree with the
 
 Worthington
 
 and
 
 Crea
 
 courts that state bar membership does not necessarily implicate substantial, continuous, or systematic contact. Although the Rio properly notes that nonresident bar members are regulated by our supreme court rules (“SCR”), we conclude that a nonresident bar member could comply with these rules without having continuous and systematic contact with the State of Nevada.
 
 [1]
 
 In fact, a nonresident, non
 
 *533
 
 practicing bar member’s compliance with the SCR could consist solely of sending a yearly check and an address update form upon relocation.
 

 Accordingly, we conclude that the district courts of Nevada lack general jurisdiction over Baker on the basis of his bar membership.
 

 B.
 
 Specific jurisdiction
 

 Specific jurisdiction over a defendant will lie only where the cause of action arises from the defendant’s purposeful contacts with the forum state.
 
 See Trump,
 
 109 Nev. at 699, 857 P.2d at 748. A state may exercise specific jurisdiction over a defendant in instances where: (1) the defendant purposefully establishes contact with the forum state and affirmatively directs his conduct toward the state; and (2) the cause of action arises from such purposeful contact with the forum.
 
 See id.
 
 at 699-700, 857 P.2d at 748.
 

 With respect to the first requisite, also known as the purposeful availment requirement, Baker argues that he did not avail himself of the forum of Nevada because the instant dispute did not arise from his hotel stay in Nevada, but rather it arose from the Rio’s false advertising in California. We conclude that this contention lacks merit because the true “injury” to Baker—specifically, having to stay in an allegedly standard-size hotel room that was advertised as a suite—arose from Baker’s stay in Nevada on March 12, 1997. Indeed, had Baker not stayed at the Rio, he would never have thought that the Rio’s California advertisements were false. Accordingly, Baker purposely availed himself of the forum of Nevada by staying the night at the Rio.
 

 With respect to the second requisite, assuming that Baker purposely directed himself to the forum of Nevada, Baker argues that his cause of action did not arise out of his contact with Nevada. Specifically, Baker argues that merely sleeping in the Rio for one night does not establish a substantial connection with the state. We conclude that this argument lacks merit because Baker’s injuries arose directly from his hotel stay.
 
 See
 
 Firouzabadi v. District Court, 110 Nev. 1348, 1355, 885 P.2d 616, 621 (1994) (for purposes of specific jurisdiction, claims must have a specific and direct relationship or be intimately related to the forum). Although Baker insists that his injury directly arose in California
 
 *534
 
 where he heard the Rio’s false and misleading ads, Baker’s alleged injury occurred in Nevada where he discovered that not all of the Rio’s hotel rooms consisted of two rooms, and thus allegedly are not “suites.”
 

 Baker further argues that even if the two requisites for specific jurisdiction are satisfied, it would be unreasonable to subject him to jurisdiction in Nevada because Nevada has no forum interest in this matter. We disagree.
 

 When determining whether personal jurisdiction will lie, this court must consider whether it is reasonable to require a defendant to defend a particular suit here.
 
 See Trump,
 
 109 Nev. at 701, 857 P.2d at 749. Factors relevant to this inquiry, among others, include the forum state’s interest in adjudicating the dispute and the interstate judicial system’s interest in the most efficient resolution of controversies.
 
 See id.
 

 We conclude that it is reasonable to require Baker to litigate this matter in Nevada. First, Nevada has an interest in resolving matters arising from injuries that occur while nonresidents are staying in its hotels. Second, hearing this matter in Nevada would promote our long-standing policy of judicial efficiency because the hotel “suite,” the alleged false marketing information, and many of the witnesses, with the exception of Baker, are located in this state.
 

 Accordingly, because Baker purposely directed himself to the forum of Nevada and because the exercise of jurisdiction over Baker is reasonable, we conclude that the Nevada courts have specific jurisdiction over Baker.
 

 CONCLUSION
 

 We conclude that Nevada does not have general jurisdiction over Baker based solely on his bar membership. However, we further conclude that the district court did not exceed its jurisdiction in denying Baker’s motion to quash service for lack of personal jurisdiction because the Nevada courts have specific jurisdiction over Baker arising from his hotel stay. Accordingly, we deny Baker’s petition for writ of prohibition.
 

 [1]
 

 The Rio brings four specific supreme court rules (“SCR”) to this court’s attention: (1) SCR 98, which requires all Nevada bar members to pay yearly fees; (2) SCR 79, which requires all Nevada bar members to keep the bar informed of their current address; (3) SCR 99, which subjects all bar members to the exclusive disciplinary jurisdiction of this court; and (4) SCR 203.5, which provides that this court has jurisdiction to impose discipline of
 
 *533
 
 its members, even for acts committed in another state. We have considered these rules and do not agree that they give rise to continuous and systematic contact with the State of Nevada.