134 P.3d 710 (2006)
ARBELLA MUTUAL INSURANCE COMPANY, a Massachusetts Corporation, Petitioner,
v.
The EIGHTH JUDICIAL DISTRICT COURT of the State of Nevada, in and for the COUNTY OF CLARK, the Honorable Stewart L. Bell, District Judge, and the Honorable Douglas Herndon, District Judge, Respondents, and
Anthony Mendes, Individually; and Muriel Morin, Individually, Real Parties in Interest.
No. 45098.
Supreme Court of Nevada.
May 25, 2006.
*711 Rawlings Olson Cannon Gormley & Desruisseaux and Raymond E. McKay, James R. Olson, and Michael E. Stoberski, Las Vegas, for Petitioner.
Glen J. Lerner & Associates and Paul D. Powell, Las Vegas, for Real Parties in Interest.
Before MAUPIN, GIBBONS and HARDESTY, JJ.

OPINION
HARDESTY, J.
In this original writ proceeding, we consider whether an automobile insurance company purposefully subjected itself to being sued in a Nevada forum by way of its policy's territory coverage clause. We conclude that, because insurance companies have the contractual ability to limit or expand the areas of their coverage, the petitioning insurance company purposefully availed itself of the Nevada forum by including Nevada within its territory coverage clause. We further conclude that, under the facts of this case, exercising jurisdiction over the petitioner is reasonable. Consequently, we deny the writ petition.

FACTS
Real parties in interest, Anthony Mendes and Muriel Morin (the Mendeses), a married couple, purchased an automobile insurance policy while living in Massachusetts, through Southeastern Insurance Company, an independent insurance agency. Southeastern is located in Massachusetts and sells insurance contracts for insurance carriers, one of which is the petitioner, Arbella Mutual Insurance Company. Arbella is a Massachusetts corporation with its principal place of business also located in Massachusetts.
The Mendeses' automobile insurance policy listed their home in Massachusetts as their primary residence, and the policy required that their vehicle would be "garaged" in that state. The policy contained a "territory clause," which provided that coverage for compulsory bodily injury to others was limited to accidents in Massachusetts, but all other parts of the policy provided for coverage for accidents and losses that occurred anywhere in the United States.
The Mendeses temporarily moved to Las Vegas, Nevada. Before their move, the Mendeses met with their Southeastern insurance agent, who advised them that changes to their policy were not necessary since they would be maintaining their Massachusetts residency, voter registrations, license plates, and driver's licenses. While in Las Vegas, the Mendeses renewed their policy with Arbella, which continued to list Massachusetts as the location of their residence and garaging of their vehicle.
Three months after moving from Massachusetts, the Mendeses' vehicle was rear ended in an automobile accident in Las Vegas. Pursuant to their insurance policy, the Mendeses demanded underinsured motorist coverage as well as medical payment coverage *712 from Arbella. Arbella paid the medical coverage benefits, but denied the demand for underinsured motorist coverage on the basis that the Mendeses' vehicle was garaged in Nevada, not Massachusetts. As a result, the Mendeses filed suit in a Nevada district court for breach of contract and bad faith.
Based on the fact that it has never done business or owned property in Nevada, Arbella moved to dismiss the Mendeses' complaint under NRCP 4 and NRCP 12(b)(2), for lack of personal jurisdiction. The district court denied Arbella's motion. Consequently, Arbella seeks writs of mandamus and prohibition from this court, challenging the district court's exercise of personal jurisdiction over it.[1]

DISCUSSION
"To obtain jurisdiction over a non-resident defendant, a plaintiff must show: (1) that the requirements of the state's long-arm statute have been satisfied, and (2) that due process is not offended by the exercise of jurisdiction."[2] First, "Nevada's long-arm statute, NRS 14.065, reaches the limits of due process set by the United States Constitution."[3] Second, the Due Process Clause of the Fourteenth Amendment requires a nonresident defendant to have "`minimum contacts'" with the forum state sufficient to ensure that exercising personal jurisdiction over him would not offend "`traditional notions of fair play and substantial justice.'"[4] "The defendant must have sufficient contacts with the forum such that he or she could reasonably anticipate being haled into court there."[5]
Arbella argues that the district court's exercise of personal jurisdiction over it violated NRS 14.065 (Nevada's long-arm statute), offending principles of due process. In particular, Arbella argues that the district court does not have specific personal jurisdiction over it because it did not purposefully avail itself of the Nevada forum, as it has no contacts with Nevada. And in any event, Arbella argues that requiring it to defend a lawsuit in Nevada would be unreasonable. We disagree.
A defendant's contacts with a state are sufficient to meet the due process requirement if either general personal jurisdiction or specific personal jurisdiction exists.[6] As we have previously recognized, general personal jurisdiction exists when the defendant's forum state activities are so "substantial" or "continuous and systematic" that it is considered present in that forum and thus subject to suit there, even though the suit's claims are unrelated to that forum.[7] It is undisputed that Arbella is not subject to general personal jurisdiction in Nevada because it is a Massachusetts insurance company with no office or direct activities in Nevada. Therefore, we focus on specific personal jurisdiction.
With regard to whether specific personal jurisdiction exists, we have previously held that
[a] state may exercise specific personal jurisdiction only where: (1) the defendant purposefully avails himself of the privilege of serving the market in the forum or of enjoying the protection of the laws of the *713 forum, or where the defendant purposefully establishes contacts with the forum state and affirmatively directs conduct toward the forum state, and (2) the cause of action arises from that purposeful contact with the forum or conduct targeting the forum.[8]
Finally, in determining whether specific personal jurisdiction exists, a court must consider whether requiring the defendant to appear in the action would be reasonable.[9]

Purposeful availment
The United States Courts of Appeals for the Fourth and the Ninth Circuits have both addressed the issue of whether an automobile insurance company's territory coverage clause may constitute purposeful availment for purposes of specific personal jurisdiction.[10]
In the Fourth Circuit case, Rossman v. State Farm Mutual Automobile Insurance Co., an Illinois insurance company (Consolidated) challenged a Virginia court's exercise of personal jurisdiction over it when one of its insured motorists was involved in a car accident in Virginia, on the basis that it did not conduct business in Virginia.[11] In addition to noting that it had conducted no business in Virginia, Consolidated pointed out that the policy was issued in Illinois and listed the insured's automobile as being principally garaged there.[12] However, the policy's territory clause explicitly provided that it covered accidents in the United States, Puerto Rico, and Canada.[13]
Consequently, the United States Court of Appeals for the Fourth Circuit held that Consolidated could undoubtedly foresee being haled into a Virginia court since litigation arising from accidents in covered states was expressly contemplated by its own policy.[14] The court reasoned that Consolidated incurred a financial benefit from its policy's broad coverage, and if it "wished to avoid suit in Virginia or any other forum, it could have excluded that state from the `policy territory' defined in the policy."[15]
Similarly, in a Ninth Circuit case, Farmers Insurance Exchange v. Portage La Prairie Mutual Insurance Co., a Canadian insurance company attempted to quash personal jurisdiction over a claim arising from a car accident in Montana on the basis that it had not done business in Montana and that it did not commit an act that had an effect in Montana.[16] The insurance company's policy stated that "[t]his Policy applies only while the automobile is being operated, used, stored or parked within Canada, [or] the United States of America."[17]
The United States Court of Appeals for the Ninth Circuit held that the insurance company had purposefully established contacts with or directed conduct toward Montana because "[i]ts policy coverage extends into Montana and an insured event resulted in litigation there."[18] Specifically, the court stated that the insurance company "purposefully availed itself of the Montana forum when it contracted to indemnify and defend claims arising there."[19] The court reasoned that "automobile liability insurers contract to indemnify and defend the insured for claims that will foreseeably result in litigation in foreign states."[20] "Moreover, . . . an insurer has the contractual ability to control the territory into which its `product'  the indemnification and defense of claims  will travel."[21]
Here, Arbella does not conduct any business, nor does it have any agents, in Nevada. *714 Arbella's policy, however, states that "[a]n accident may happen in Massachusetts or out of state." Additionally, Arbella's territory clause states that coverage is nationwide:
Compulsory Bodily Injury To Others (Part 1) only covers accidents in Massachusetts. All the other Parts provide coverage for accidents and losses which happen in the United States or Canada. We consider United States territories and possessions and Puerto Rico to be part of the United States.
We agree with the reasoning set forth in Rossman and Portage La Prairie and conclude that Arbella purposefully availed itself of Nevada's forum when it contracted with the Mendeses to provide coverage in Nevada. In contracting for such coverage, Arbella could reasonably have anticipated that the Mendeses could be involved in an accident outside of Massachusetts that would result in litigation.[22] As recognized by the Rossman court, "`[I]nsurance by its nature involves the assertion of claims, and resort to litigation is often necessary.'"[23] Arbella cannot expect to gain financial benefits from having a nationwide territory clause without expecting to incur the burden of having to participate in nationwide litigation.[24] Consequently, we conclude that Arbella has purposefully availed itself of the Nevada forum.[25]

Relatedness of claim to contact
The second inquiry that this court considers when determining whether a Nevada court has properly exercised specific personal jurisdiction over a defendant is whether "the cause of action arises from that purposeful contact with the forum or conduct targeting the forum."[26] We have held that "the claims must have `a specific and direct relationship or be intimately related to the forum contacts.'"[27]
The Mendeses' causes of action against Arbella are for breach of contract and bad faith. These claims arise directly from Arbella's refusal to pay their underinsured motorist claim pursuant to their policy. Thus, we conclude that the district court did not abuse its discretion or exceed its jurisdiction in determining that the Mendeses have met the second requirement in establishing that personal jurisdiction is proper.[28]

Reasonableness
Lastly, when determining whether specific personal jurisdiction is properly exercised over a defendant, this court must consider whether it is reasonable to require the defendant to defend the particular lawsuit in Nevada.[29] Factors relevant to this inquiry include the burden that the defendant will face in defending claims in Nevada, Nevada's interest in adjudicating those claims, the plaintiffs' interests in obtaining expedited relief, along with interstate considerations such as efficiency and social policy.[30]
The burden of requiring Arbella to defend this lawsuit in Nevada appears minimal. Arbella's *715 policy states that aside from compulsory bodily injury to others, the Mendeses are covered "for accidents and losses which happen in the United States." Further, the territory clause demonstrates Arbella's expectation that it will appear and defend the policy holder for an accident or loss in a foreign jurisdiction. It is not unreasonable to require Arbella to defend itself in a foreign jurisdiction where its coverage is implicated. In Jarstad v. National Farmers Union, this court found that such a clause made personal jurisdiction reasonable in and of itself.[31]
Additionally, Nevada's interest in adjudicating this dispute is significant, since the accident occurred in Nevada. At the time of the accident, the Mendeses were temporarily residing in Nevada and Nevada has an interest in providing a forum for its residents to litigate disputes.[32] The Mendeses' interest in obtaining convenient and effective relief is important as they now live in Nevada.
Finally, given that the Mendeses live in Nevada, the accident occurred in Nevada, and the Mendeses' claim arises out of that accident, balancing the interests between Nevada and Massachusetts supports the conclusion that requiring Arbella to defend this lawsuit in Nevada is reasonable.

CONCLUSION
For the reasons discussed above, we conclude that Arbella purposefully availed itself of the Nevada forum by way of its policy's territory clause. Moreover, the fact that the accident occurred in Nevada, where the Mendeses resided and continue to reside, coupled with Arbella's territory clause, make personal jurisdiction in a Nevada forum reasonable. Accordingly, we deny the petition for a writ of mandamus or prohibition.
MAUPIN and GIBBONS, JJ., concur.
NOTES
[1] We note that while Arbella petitions this court for writs of mandamus and prohibition, its proper remedy is a writ of prohibition. See Trump v. District Court, 109 Nev. 687, 692, 857 P.2d 740, 743 (1993) ("A writ of prohibition is the appropriate remedy for a district court's erroneous refusal to quash service of process."); cf. Jarstad v. National Farmers Union, 92 Nev. 380, 384, 552 P.2d 49, 51 (1976) (stating that a writ of mandamus is "to compel the district court to accept jurisdiction"); see also Firouzabadi v. District Court, 110 Nev. 1348, 1351-52, 885 P.2d 616, 618 (1994) ("As no appeal lies from an order quashing service of process, a petition for a writ of mandamus is the proper means by which to challenge such an order.").
[2] Trump, 109 Nev. at 698, 857 P.2d at 747.
[3] Baker v. Dist. Ct., 116 Nev. 527, 531, 999 P.2d 1020, 1023 (2000).
[4] Id. at 531-32, 999 P.2d at 1023 (quoting Mizner v. Mizner, 84 Nev. 268, 270, 439 P.2d 679, 680 (1968) (citing Internat. Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945))).
[5] Trump, 109 Nev. at 699, 857 P.2d at 748.
[6] Id. at 699-701, 857 P.2d at 748-49.
[7] Firouzabadi, 110 Nev. at 1352, 885 P.2d at 619.
[8] Trump, 109 Nev. at 699-700, 857 P.2d at 748.
[9] Baker, 116 Nev. at 534, 999 P.2d at 1024.
[10] See Farmers Ins. Ex. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911 (9th Cir.1990); Rossman v. State Farm Mut. Auto. Ins. Co., 832 F.2d 282 (4th Cir.1987).
[11] 832 F.2d at 285-86.
[12] Id. at 286.
[13] Id. at 285.
[14] Id. at 286.
[15] Id. at 287.
[16] 907 F.2d 911, 912-13 (9th Cir.1990).
[17] Id. at 913 n. 2.
[18] Id. at 913.
[19] Id. at 914.
[20] Id.
[21] Id.
[22] See Rossman, 832 F.2d at 286 ("As an automobile liability insurer, Consolidated could anticipate the risk that its clients would travel in their automobiles to different states and become involved in accidents and litigation there.").
[23] Id. (quoting August v. HBA Life Insurance Co., 734 F.2d 168, 172 (4th Cir.1984)).
[24] Cf. Budget Rent-A-Car v. District Court, 108 Nev. 483, 835 P.2d 17 (1992) (holding that specific personal jurisdiction did not exist over a California car rental agency sued in Nevada, arising from an auto accident there, when the rental agency's contract expressly prohibited lessees from driving into Nevada).
[25] We note that, like in Rossman, Arbella argues that by the terms of their renewal, the Mendeses continued to both reside and garage their vehicle in Massachusetts. However, the insurance policy's requirement that the Mendeses' vehicle be garaged in Massachusetts is unrelated to the jurisdictional question presented here. Rather, the garage requirement is a question of coverage germane to Arbella's defense that denial of the Mendeses' claim was proper.
[26] Trump v. District Court, 109 Nev. 687, 700, 857 P.2d 740, 748 (1993).
[27] Firouzabadi v. District Court, 110 Nev. 1348, 1355-56, 885 P.2d 616, 621 (1994) (quoting Munley v. District Court, 104 Nev. 492, 496, 761 P.2d 414, 416 (1988)).
[28] Id. at 1356, 885 P.2d at 621.
[29] Trump, 109 Nev. at 700-01, 857 P.2d at 749.
[30] Emeterio v. Clint Hurt and Assocs., 114 Nev. 1031, 1036-37, 967 P.2d 432, 436 (1998) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).
[31] 92 Nev. 380, 387, 552 P.2d 49, 54 (1976).
[32] Levinson v. District Court, 103 Nev. 404, 408, 742 P.2d 1024, 1026 (1987).