**131 Nev., Advance Opinion 5**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| FULBRIGHT & JAWORSKI LLP, A TEXAS LIMITED LIABILITY PARTNERSHIP; AND JANE MACON, A TEXAS RESIDENT, Petitioners, vs. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE NANCY L. ALLF, DISTRICT JUDGE, Respondents, and VERANO LAND GROUP, LP, A NEVADA LIMITED PARTNERSHIP, Real Party in Interest. | No. 65122 FILED FEB 05 2015 TRACIE K. LINDEMAN CLERK OF SUPREME COURT BY CHIEF DEPUTY CLERK |

Original petition for a writ of prohibition challenging a district court order denying a motion to dismiss for lack of personal jurisdiction.

*Petition granted in part and denied in part.*

Snell & Wilmer L.L.P. and Alex L. Fugazzi and Kelly H. Dove, Las Vegas;
Snell & Wilmer L.L.P. and Matthew L. Lalli, Salt Lake City, Utah,
for Petitioners.

Kemp, Jones & Coulthard, LLP, and J. Randall Jones, Matthew S. Carter, and Carol L. Harris, Las Vegas,
for Real Party in Interest.

BEFORE HARDESTY, C.J., DOUGLAS and CHERRY, JJ.

3/12/15: Corrected per letter to publishers. CT

15-63814

## OPINION

By the Court, HARDESTY, C.J.:

In this original petition for a writ of prohibition, we consider whether a Texas-based law firm's representation of a Nevada client in a Texas matter, by itself, provides a basis for specific personal jurisdiction in Nevada. While we conclude that it does not and grant petitioners' petition for a writ of prohibition insofar as it seeks to vacate the district court's order denying their motion to dismiss, we nonetheless, deny petitioners' writ petition to the extent that it seeks to direct the district court to grant their motion to dismiss because additional evidence may have been procured in discovery while this writ petition was pending that may support a prima facie showing of personal jurisdiction.

## FACTS

The underlying lawsuit seeks redress for complications that arose in connection with a real-estate development project in San Antonio, Texas. As is relevant to this writ petition, the project began in 2006 when three individuals, who were the managers of a Nevada limited liability company named Triple L Management, LLC, began acquiring parcels of real estate in San Antonio. The real estate was acquired based on its proximity to a yet-to-be-constructed branch campus of Texas A&M University, and Triple L's managers solicited funds from investors based on the real estate's projected increase in value.

By July 2006, Triple L's managers had raised more than $20 million from individual investors who were predominantly Nevada

residents, and escrow closed on the acquired property that same month.[1] Title to the property was put in the name of real party in interest Verano Land Group, LP, a limited partnership created by Triple L's managers wherein Triple L retained managerial control as Verano's general partner and the investors were designated as limited partners. Verano was registered as a Texas partnership, and in December 2006, Verano (via its general partner Triple L, via Triple L's three managers) sought out and retained the Texas law firm of Fulbright & Jaworski LLP, a petitioner herein, to provide Verano with legal guidance pertaining to the development project.[2] At the time of this case's underlying events, Fulbright & Jaworski was a limited liability partnership registered in Texas with offices throughout the United States, although it had no offices in Nevada and none of its attorneys were licensed to practice in Nevada. As Verano's complaint in the underlying action would later explain, Verano solicited Fulbright & Jaworski based upon the fact that one of its partners, petitioner and Texas resident Jane Macon, was the former city

---

[1]The complaint in the underlying action also indicates that, at some point, another $45 million was generated from the same investors, which was used to purchase additional acreage near the projected location of the Texas A&M campus. The complaint, however, does not allege that petitioners were involved in generating those additional funds.

[2]The record contains conflicting evidence as to whether petitioners helped Triple L's managers create Verano and register Verano as a Texas partnership or if, instead, Triple L's managers did so on their own before retaining petitioners. At any rate, throughout the time that petitioners served as Verano's counsel, Verano was managed by a Nevada-based general partner, and because petitioners do not appear to take issue with the characterization, we refer to Verano as a Nevada-based client.

attorney for San Antonio and was therefore "highly experienced and connected in the San Antonio development and planning arena."

Between 2006 and 2010, Macon served as Fulbright & Jaworski's point of contact for Verano, and Macon, in turn, dealt with Verano's general partner, Triple L, regarding the legal matters pertaining to Verano's development project. During that time, Macon sent numerous e-mails and placed repeated phone calls to Triple L's managers in Nevada concerning Verano's project. Petitioners also sent billing invoices to Triple L's Nevada mailing address, which were paid from a Nevada bank account. During 2007 and 2008, Macon worked with Triple L, Texas A&M, and the City of San Antonio to finalize an agreement wherein Verano would donate a portion of its real estate to Texas A&M and, in exchange, the City of San Antonio would provide Verano with roughly $250 million in public funds, which Verano would use to further develop the property that it retained. As part of consummating this agreement, however, Macon and Triple L created a separate entity, VTLM Texas, LP, that was to serve as Verano's agent for purposes of dealing with Texas A&M and the City of San Antonio.[3] Consequently, under the finalized exchange agreement, Verano donated roughly 700 acres of land to Texas A&M, and VTLM Texas was denominated as the entity entitled to receive the public funds.

In August and September of 2010, Macon traveled to Las Vegas on two occasions to participate in two presentations to Verano's

_____

[3]Macon would later explain that a separate entity was created in an attempt to minimize Verano's investors' income tax liabilities. The propriety of that decision appears to be a primary component of Verano's claims against petitioners.

investors regarding the project's status. Shortly after those presentations, and allegedly as a result of the information conveyed at the presentations, Verano's investors began to question whether Triple L and its managers were adequately representing Verano's interests. Thereafter, near the end of 2010, a supermajority of Verano's investors voted to remove Triple L from its role as Verano's general partner and to replace Triple L with a new general partner. Throughout most of 2011, Macon continued to represent Verano, and in so doing, communicated with Verano's new general partner regarding the status of the project. By late 2011, however, the attorney-client relationship between petitioners and Verano had terminated. The record does not clearly reflect the date on which the relationship was terminated or which party terminated the relationship, but in any event, in November 2011, Verano's new general partner re-registered Verano as a Nevada partnership.

Verano then instituted the underlying action in 2012, naming petitioners as defendants.[4] Generally speaking, Verano's complaint alleged that petitioners had breached their fiduciary duties and engaged in self-dealing by donating more of Verano's land to Texas A&M than Verano had originally intended to donate and by assisting Triple L in creating VTLM Texas in order to usurp the City of San Antonio's public funds. Petitioners filed a motion to dismiss, contending that their contacts with Nevada were insufficient to subject them to personal jurisdiction.

---

[4]Verano also named Triple L, Triple L's three managers, VTLM Texas, and various other entities as defendants. Those defendants are no longer parties to the underlying action.

Verano opposed the motion, arguing that petitioners were subject to both general and specific personal jurisdiction. In particular, Verano contended that Fulbright & Jaworski's contacts with Nevada in unrelated matters were sufficient to subject the firm to general personal jurisdiction for purposes of the underlying matter. Additionally, Verano contended that petitioners were subject to specific personal jurisdiction because they had purposefully availed themselves of the privilege of acting in Nevada by agreeing to represent a Nevada-based client, by directing correspondence to that client in Nevada, and by participating in two presentations in Nevada.

The district court agreed that Verano had made a prima facie showing that petitioners were subject to both general and specific personal jurisdiction and denied petitioners' motion to dismiss. Petitioners then filed this writ petition. After the writ petition was filed, the parties continued to engage in discovery in preparation for trial until this court entered an order staying the underlying proceedings.

### DISCUSSION

*Standard of review*

"A writ of prohibition is available to arrest or remedy district court actions taken without or in excess of jurisdiction." *Viega GmbH v. Eighth Judicial Dist. Court*, 130 Nev. ___, ___, 328 P.3d 1152, 1156 (2014). Writ relief is an extraordinary remedy, and this court typically exercises its discretion to consider a writ petition only when there is no plain, speedy, and adequate remedy in the ordinary course of law. *Id.* While an appeal is generally considered to be an adequate legal remedy precluding writ relief, *Pan v. Eighth Judicial Dist. Court*, 120 Nev. 222, 224, 88 P.3d 840, 841 (2004), the right to appeal is inadequate to correct an invalid exercise of personal jurisdiction over a defendant. *Viega*, 130 Nev. at ___,

328 P.3d at 1156. Because petitioners challenge the district court's ruling regarding personal jurisdiction, we elect to exercise our discretion and consider this writ petition. *Id.* This court reviews de novo a district court's determination of personal jurisdiction. *Id.*

*Jurisdiction over a nonresident defendant*

When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of showing that jurisdiction exists. *Trump v. Eighth Judicial Dist. Court*, 109 Nev. 687, 692, 857 P.2d 740, 743-44 (1993). In so doing, the plaintiff must satisfy the requirements of Nevada's long-arm statute and show that jurisdiction does not offend principles of due process. *Id.* at 698, 857 P.2d at 747; NRS 14.065. Under the Fourteenth Amendment's Due Process Clause, a nonresident defendant must have sufficient "minimum contacts" with the forum state so that subjecting the defendant to the state's jurisdiction will not "offend traditional notions of fair play and substantial justice." *Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 122 Nev. 509, 512, 134 P.3d 710, 712 (2006) (internal quotations omitted). "Due process requirements are satisfied if the nonresident defendants['s] contacts are sufficient to obtain either (1) general jurisdiction, or (2) specific personal jurisdiction and it is reasonable to subject the nonresident defendant[ ] to suit [in the forum state]." *Viega*, 130 Nev. at ___, 328 P.3d at 1156. Because Nevada's long-arm statute, NRS 14.065, permits personal jurisdiction over a nonresident defendant unless the exercise of jurisdiction would violate due process, our inquiry in this writ petition is confined to whether the exercise of jurisdiction over Fulbright & Jaworski and Macon comports with due process. *Id.*



Thus, in order to overcome petitioners' motion to dismiss, Verano needed to make a prima facie showing of either general or specific personal jurisdiction by "produc[ing] some evidence in support of all facts necessary for a finding of personal jurisdiction." *Trump*, 109 Nev. at 692, 857 P.2d at 744. Because the district court determined that Verano had made a prima facie showing of general and specific personal jurisdiction as to both Fulbright & Jaworski and Macon, we consider the two bases for jurisdiction in turn.

*Verano has not made a prima facie showing of general personal jurisdiction*

"A court may exercise general jurisdiction over a [nonresident defendant] when its contacts with the forum state are so "'continuous and systematic" as to render [the defendant] essentially at home in the forum State.'" *Viega*, 130 Nev. at ___, 328 P.3d at 1156-57 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ___, ___, 131 S. Ct. 2846, 2851 (2011)); *see also Arbella Mut. Ins. Co.*, 122 Nev. at 513, 134 P.3d at 712 ("[G]eneral personal jurisdiction exists when the defendant's forum state activities are so substantial or continuous and systematic that it is considered present in that forum and thus subject to suit there, even though the suit's claims are unrelated to that forum." (internal quotations omitted)). A general jurisdiction inquiry "calls for an appraisal of a [defendant's] activities in their entirety, nationwide and worldwide." *Daimler AG v. Bauman*, 571 U.S. ___, ___ n.20, 134 S. Ct. 746, 762 n.20 (2014).

In support of its prima facie showing of general personal jurisdiction over Fulbright & Jaworski,[5] Verano introduced evidence showing that a Fulbright & Jaworski attorney was a registered lobbyist during both the 2007 and 2009 Nevada legislative sessions and that seven Fulbright & Jaworski attorneys had been admitted pro hac vice in Nevada for the purpose of representing two different clients in lengthy litigation, stemming back to the early 2000s and unrelated to the underlying litigation, that "resulted in multi-million dollars of verdicts." Contrary to the district court's conclusion that this evidence was sufficient to make a prima facie showing of general jurisdiction over Fulbright & Jaworski, we are not persuaded.

In isolation, the evidence of Fulbright & Jaworski's activities in Nevada may arguably be substantial, but those activities presumably comprise only a fraction of Fulbright & Jaworski's overall business. *See Daimler AG*, 571 U.S. at ___ n.20, 134 S. Ct. at 762 n.20. Thus, in this case, we conclude that a registered lobbyist during two legislative sessions and pro hac vice appearances by Fulbright & Jaworski attorneys in two lengthy lawsuits in Nevada that result in jury verdicts in their clients' favor are not substantial activities that are so continuous and systematic that Nevada can be considered Fulbright & Jaworski's home. To conclude otherwise would subject Fulbright & Jaworski to suit in Nevada in connection with any claim that any of its clients throughout the world may

_____

[5]Although the district court also determined that Macon was subject to general jurisdiction in Nevada, the basis for that determination is unclear, as the record contains no evidence to suggest that Macon's contacts with Nevada were such that she could be subject to general personal jurisdiction. Thus, we do not further discuss this issue as it pertains to Macon.

 

have against the firm. *See Arbella Mut. Ins. Co.*, 122 Nev. at 513, 134 P.3d at 712. Based on this reasoning, we conclude that Verano failed to make a prima facie showing that petitioners were subject to general personal jurisdiction, and the district court improperly used general jurisdiction as a basis for denying petitioners' motion to dismiss.

*Verano has not made a prima facie showing of specific personal jurisdiction*

"Unlike general jurisdiction, specific jurisdiction is proper only where 'the cause of action arises from the defendant's contacts with the forum.'" *Dogra v. Liles*, 129 Nev. ___, ___, 314 P.3d 952, 955 (2013) (quoting *Trump*, 109 Nev. at 699, 857 P.2d at 748). In other words, in order to exercise specific personal jurisdiction over a nonresident defendant,

> "[t]he defendant must purposefully avail himself of the privilege of acting in the forum state or of causing important consequences in that state. The cause of action must arise from the consequences in the forum state of the defendant's activities, and those activities, or the consequences thereof, must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

*Consipio Holding, BV v. Carlberg*, 128 Nev. ___, ___, 282 P.3d 751, 755 (2012) (quoting *Jarstad v. Nat'l Farmers Union Prop. & Cas. Co.*, 92 Nev. 380, 387, 552 P.2d 49, 53 (1976)). Verano contends, and the district court agreed, that this standard was satisfied in light of Verano's evidence showing that petitioners agreed to represent a Nevada-based client and directed client-related correspondence into Nevada, as well as by virtue of Macon's participation in the two investor presentations in Nevada. We must determine whether this evidence, if considered in isolation or

cumulatively, is sufficient to make a prima facie showing of specific personal jurisdiction over petitioners. *See Consipio Holding*, 128 Nev. at ___, 282 P.3d at 754; *Trump*, 109 Nev. at 692, 857 P.2d at 743-44.

> *Representing a Nevada client on an out-of-state matter does not necessarily subject an out-of-state law firm to personal jurisdiction*

We first consider whether an out-of-state law firm's representation of a Nevada client, combined with the communications that are incident to an attorney-client relationship, is sufficient in and of itself to subject the law firm to specific personal jurisdiction in Nevada. The Tenth Circuit Court of Appeals recently addressed this identical issue in *Newsome v. Gallacher*, 722 F.3d 1257, 1279-81 (10th Cir. 2013), and the court's opinion provides helpful guidance to us here.

In *Newsome*, a Canadian law firm was hired by a Canadian-based company and its United States subsidiary doing business in Oklahoma. *Id.* at 1262-63. As part of the firm's work for the companies, the firm helped consummate a business transaction in Canada, "facilitated" the placement of liens on certain property in Oklahoma, and received payments from an Oklahoma bank account. *Id.* at 1280-81. A bankruptcy trustee for the subsidiary company then sued the Canadian firm in Oklahoma. *Id.* at 1263. On appeal, the Tenth Circuit considered whether the lower court properly dismissed the firm from the case for lack of personal jurisdiction.

As part of its analysis, the *Newsome* court canvassed decisions from other jurisdictions and arrived at what it believed to be a "majority" approach and a "minority" approach to the issue of whether an out-of-state law firm's representation of a client is sufficient to subject the law firm to personal jurisdiction in the client's home state. *Id.* at 1280. The *Newsome*

court identified the "majority" approach as one that declines to find personal jurisdiction over an out-of-state law firm based solely on its representation of an in-state client. *Id.* In so doing, the *Newsome* court explained, "[t]he majority reasons that representing a client residing in a distant forum is not necessarily a purposeful availment of that distant forum's laws and privileges" and that, instead, "[t]he client's residence is often seen . . . as a mere fortuity." *Id.* (internal quotations omitted). Similarly, under the majority approach, communications incidental to the attorney-client relationship that are directed to the forum state simply because the client resides there are also seen as merely fortuitous and do not constitute purposeful availment. *See, e.g., Sawtelle v. Farrell*, 70 F.3d 1381, 1391-92 (1st Cir. 1995) (concluding that "written and telephone communications with the clients in the state where they happened to live" were not sufficient to subject an out-of-state law firm to personal jurisdiction); *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (explaining that placing phone calls to the client in the forum state, mailing letters to the client in the forum state, and accepting payments from the client's forum-state bank are all "normal incidents of . . . representation" that, "by themselves, do not establish purposeful availment"); *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226 (8th Cir. 1987) (concluding that phone calls made to the client's home state, monthly billings mailed to the client's home state, and payments made from the client's home-state bank were not sufficient to subject an out-of-state law firm to personal jurisdiction); *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 9 (D.D.C. 2009) ("Plaintiff must establish more than the attorney-client relationship and contacts incidental to the attorney-client relationship in order to

meet . . . constitutional due process requirements."); *We're Talkin' Mardi Gras, LLC v. Davis*, 192 F. Supp. 2d 635, 640 (E.D. La. 2002) ("[A]ll of the communications to Louisiana rest on nothing more than the mere fortuity that [the client] happened to be a resident of Louisiana. They would have been the same regardless of where [the client] lived. Thus such communication can not be considered purposeful availment . . . .").

In contrast, the *Newsome* court explained, "[t]he minority view reasons that attorneys can accept or reject representing clients in distant forums, and that those who accept such representation have fair warning that they might be sued for malpractice in the client's forum." 722 F.3d at 1280 (internal quotations omitted). The *Newsome* court also recognized that, under the minority approach, "the normal communications that make up an active attorney-client relationship are [seen as] the sort of repeated, purposeful contacts with the client's home forum sufficient to establish personal jurisdiction." *Id.* (citing *Cartlidge v. Hernandez*, 9 S.W.3d 341, 348 (Tex. App. 1999)); *see Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1272 (Colo. 2002) (concluding that "communications and attempted communications with [a client] by mail and telephone" were among the "purposeful contacts" that an attorney made with the forum state).

Ultimately, the *Newsome* court agreed with the majority approach and affirmed the dismissal of the Canadian law firm for lack of personal jurisdiction. 722 F.3d at 1280-81. To that end, it concluded narrowly that "an out-of-state attorney working from out-of-state on an out-of-state matter does not purposefully avail himself of the client's home forum's laws and privileges, at least not without some evidence that the attorney reached out to the client's home forum to solicit the client's

business." *Id.* We agree with this conclusion and its formulation of the majority approach in two key respects. First, we agree that a lack of solicitation on the out-of-state law firm's part is highly relevant to the inquiry of whether the firm purposefully availed itself of the privileges of acting in Nevada. Second, we agree that an out-of-state firm's representation of a client on a non-Nevada "matter" is highly relevant to that same inquiry.

Applying the majority approach here leads to the conclusion that petitioners did not subject themselves to specific personal jurisdiction in Nevada simply by virtue of representing Verano. It is undisputed that petitioners did not actively seek out Verano's business, but rather, it was Verano's general partner that reached out to petitioners in Texas.[6] Similarly, it cannot reasonably be disputed that the "matter" for which petitioners were retained to represent Verano was a Texas real-estate-development project.[7] Thus, we conclude that petitioners' representation of Verano on an out-of-state matter and petitioners' communications with

---

[6]In this regard, our decision in *Peccole v. Eighth Judicial District Court*, 111 Nev. 968, 899 P.2d 568 (1995), is distinguishable. While we stated in *Peccole* that "use of the telephone can be sufficient for 'purposeful availment,'" *id.* at 971, 899 P.2d at 570 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 481 (1985)), that statement was made in the context of concluding that the Colorado defendants may have solicited the Nevada plaintiffs' business via telephone. *See id.*

[7]We disagree with Verano's suggestion that petitioners "always treated" the project "as an investment project by Nevadans and for Nevadans." To the contrary, petitioners' engagement agreement with Verano expressly stated that petitioners were being retained "in connection with advising you regarding a real estate, economic development and tax increment financing matters concerning a Texas A&M University location in San Antonio, Texas (the 'Matter')."

Verano that were incidental to that representation is, without more, not sufficient to make a prima facie showing of specific personal jurisdiction.

*Based on the existing record, Verano's evidence of petitioners' additional Nevada contacts is insufficient to make a prima facie showing of personal jurisdiction*

We next consider whether Macon's attendance at two presentations in Las Vegas was sufficient contact in Nevada to make a prima facie showing of personal jurisdiction. In opposing petitioners' motion to dismiss, Verano submitted an affidavit from one of its investors attesting to the fact that he attended two presentations in 2010 in Las Vegas at which Macon participated. According to the investor, at those presentations, Macon (1) solicited additional investment funds from Verano's investors; and (2) failed to disclose the existence of VTLM Texas, the entity that Macon helped to create as part of the alleged effort to deprive Verano of the public funds from the City of San Antonio. Based on this evidence, the district court concluded that Macon had provided "legal advice" to Verano's investors in Nevada and that, consequently, petitioners had purposefully availed themselves of the privilege of acting in Nevada.

We are not persuaded that this evidence amounted to purposeful availment sufficient to make a prima facie showing of specific personal jurisdiction. Purposeful availment requires that "[t]he cause of action . . . arise from the consequences in the forum state of the defendant's activities." *Consipio Holding*, 128 Nev. at ___, 282 P.3d at 755 (internal quotations omitted). Here, although the district court concluded that Macon provided "legal advice" to Verano's investors at the two presentations, the record contains no indication of what that legal advice

was, much less how Verano's causes of action against petitioners arose from that legal advice. *See id.*

As the above-described majority approach recognizes, a law firm does not purposefully avail itself of the benefit of acting in the client's home state simply by meeting with the client in that state. *See, e.g., Sher*, 911 F.2d at 1363 (concluding that three trips to the client's home state of California to meet with the client "were discrete events arising out of a case centered entirely in Florida [that] appear[ed] to have been little more than a convenience to the client"); *Austad Co.*, 823 F.2d at 226 (concluding that a law firm associate's three-day visit to the client's office for the purpose of reviewing documents was insufficient to show purposeful availment). Thus, without any evidence as to how Macon's legal advice at the two Las Vegas presentations related to Verano's causes of action against petitioners, we conclude that Macon's two trips to Nevada did not amount to petitioners purposefully availing themselves of the privilege of acting in Nevada. *See Consipio Holding*, 128 Nev. at ___, 282 P.3d at 755.

We further note that the affidavit from Verano's investor, while providing slightly more detail than the district court's order, suffers from the same shortcoming. Specifically, although the investor attested to Macon soliciting additional investment funds, Verano's complaint contains no allegation that any additional funds were raised as a result of Macon's solicitations, much less that those funds were somehow misspent and thereby form a basis for Verano's claims against petitioners. Similarly, it is not immediately apparent from Verano's complaint how Macon's failure to mention the existence of VTLM Texas, which at the time of the presentations had been in existence for at least two years, relates to Verano's causes of action against petitioners. *See id.* In any event, we

SUPREME COURT
OF
NEVADA

(O) 1947A

16

question whether those nonstatements regarding a Texas entity would "have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant[s] reasonable." *Id.* (internal quotations omitted).

## *CONCLUSION*

Based on the evidence presented to the district court, we conclude that Verano failed to make a prima facie showing that petitioners are subject to general or specific personal jurisdiction. In particular, we conclude that an out-of-state law firm that is solicited by a Nevada client to represent the client on an out-of-state matter does not subject itself to personal jurisdiction in Nevada simply by virtue of agreeing to represent the client. Moreover, because Verano's additional evidence of petitioners' Nevada contacts have no clear connection to Verano's causes of action against petitioners, we conclude that Verano failed to make a prima facie showing of personal jurisdiction.

We therefore conclude that writ relief is warranted to the extent that petitioners seek an order directing the district court to vacate its May 9, 2013, order denying petitioners' motion to dismiss. To the extent that petitioners seek an order directing the district court to grant their motion to dismiss, however, we conclude that our extraordinary intervention is unwarranted at this time. In particular, because Verano was only required to make a prima facie showing of personal jurisdiction at the pretrial stage, and because additional jurisdiction-related evidence may have been produced during discovery that was ongoing during this writ petition's pendency, Verano is entitled to make a prima facie showing

of personal jurisdiction with this additional evidence at its disposal.[8] Accordingly, consistent with the foregoing, we grant petitioners' writ petition in part and deny the petition in part, and we direct the clerk of this court to issue a writ of prohibition instructing the district court to vacate its order denying petitioners' motion to dismiss.[9]

_____, C.J.
Hardesty

We concur:

_____, J.
Douglas

_____, J.
Cherry

---

[8]In this regard, Verano's December 17, 2014, motion to file a supplemental appendix is denied. *See Zugel v. Miller*, 99 Nev. 100, 101, 659 P.2d 296, 297 (1983) ("This court is not a fact-finding tribunal . . . .").

[9]In light of our resolution of this writ petition, the stay imposed by our November 21, 2014, order is vacated.